CITY OF STANBERRY, Appellant, v. JARVE
O'NEAL, Respondent.

**Kansas City Court of Appeals.   November 11, 1912.**

1. **MUNICIPAL OFFENSE: Reasonable Doubt: Malum in se.** In prosecutions by a city under a municipal ordinance for an offense which is *malum in se*, the defendant is entitled to an instruction requiring the jury to give him the benefit of a reasonable doubt.

2. **OFFICER: Arrest: Flight: Firing upon.** In attempting to apprehend one charged with a violation of a municipal ordinance, or a *misdemeanor*, who has taken to flight, an officer has no right to kill him, or to fire upon him with intent to do so.

3. ———: ———: ———: **Assault with Intent to Kill: Defense of Brother.** Where a city marshal in attempting to apprehend a person fleeing from arrest for violation of a municipal ordinance, attempts to kill him by firing upon him with a pistol, the brother of such person has a right to defend him by resisting the officer.

Appeal from Gentry Circuit Court.—*Hon. W. C. Ellison*, Judge.

AFFIRMED.

*James F. Wood* and *J. W. Peery* for appellant.

*John A. Showen* and *R. S. Robertson* for respondent.

ELLISON, J.—The defendant was charged with a violation of an ordinance of the city of Stanberry. The judgment in the circuit court, on appeal, was for the defendant. The city thereupon brought the case here.

The question presented is whether in a prosecution for the violation of a municipal ordinance inflicting a punishment of imprisonment in jail for six months, or a fine of $200, or both, for disturbing the

peace by loud and indecent conversation and quarrel-
ling and fighting, it is proper to instruct the jury in
the circuit court that the defendant must be believed
to be guilty beyond a reasonable doubt. The general
rule requiring such an instruction for all offenses of
a high grade is, of course, admitted, but it is claimed
that for the lesser grades of offenses, such as those
committed against municipalities, the rule does not
apply. The reason for this claim is based upon the
statement that prosecutions for the violation of muni-
cipal ordinances are civil actions; then, assuming that
in all civil actions there need be only a preponderance
of evidence to sustain the plaintiff, the inference is
drawn that such preponderance is all that is required
in a prosecution for a municipal offense.

It takes all of these assumptions or claims to jus-
tify the conclusion which denies to an accused the right
to such an instruction, and we think each of them erro-
neous. In the first place, the rule requiring proof of
the guilt of an accused applies quite as fully to the
lesser grades of offenses as to the higher. It applies
in prosecutions for misdemeanors. [1 Bishop's
Crim. Proc., sec. 1093; Underhill on Crim. Ev., sec. 14;
Fuller v. State, 12 Ohio St. 433; Vandeventer v. State,
38 Neb. 592; Stewart v. State, 44 Ind. 237; Sowder
v. Commonwealth, 8 Bush. 432; Wasden v. State, 18
Ga. 264; State v. Knox, 61 N. C. 312; State v. King,
20 Ark. 166.] Starkie's Ev. (1 Vol., 451) states that
the rule applies to "all criminal cases *whatsoever.*"
And in Fuller v. State, supra, it is asked: "If the rule
is to be applied in cases only involving a certain grade
of crime, where shall the line be drawn? And upon what
principle shall the distinction be justified? In State
v. King, supra, the penalty was a fine only, while, in
this case, as we have stated, the punishment may be
imprisonment. And in Commonwealth v. Intoxicating
Liquors, 115 Mass. 142, which was for a forfeiture of
liquors, the court went so far as to hold that the "pro-

ceedings were in the nature of a criminal prosecution," and required an instruction on reasonable doubt.

In the second place, it is improper to consider the fact that our Supreme Court has designated a prosecution for an offense committed against municipal ordinances, a civil action, as was done in State v. Gustin, 152 Mo. 108; State v. Muir, 164 Mo. 610, and Canton v. McDaniel, 188 Mo. 207, as determining the question whether the accused should be deprived of the protection of the rule as to a reasonable doubt. Those cases do not affect that question. The court did not say that such cases were in all respects like those which are commonly understood to be ordinary civil cases, and that in *all* respects the practice, procedure and rights of the parties were the same. There are necessary differences between them in some respects. Thus, it has been ruled, time and again, by the Supreme Court, that such cases are quasi criminal, which is no less than saying that they are like criminal cases in many respects. It was stated in Stevens v. Kansas City, 146 Mo. 460, that a proceeding to "punish a violation of a municipal ordinance by fine and imprisonment is civil in form and quasi criminal in character. It is governed by the rules of pleading applicable in civil cases, but if it was solely civil no fine or imprisonment could be inflicted. It is therefore a quasi civil and criminal action. Partaking of some of the features of each, its similitude to either is not complete. In pleading, it is more nearly like a civil action, *but in its effects and consequences, it more nearly resembles a criminal proceeding.*" This language is quoted and approved in Douglas v. Kansas City, 147 Mo. 428, 437. In St. Louis v. Weitzel, 130 Mo. 600, 612, such proceeding is spoken of as a civil action and not *"strictly criminal"* in its nature (italics ours). And in Kansas City v. Neal, 122 Mo. 232, 234, it is said to be "civil in form and *quasi criminal* in character." It was therefore held in the Stevens case that though the criminal court

only had jurisdiction of appeals in criminal cases, it was proper to appeal a prosecution for a municipal offense to that court. That an arrest and prosecution for a municipal offense is not an ordinary civil action is determined by the statute itself (Sec. 1787, R. S. 1909), which forbids arrest "in any civil action whatsoever."

Among other distinguishing marks are these: The fine which is imposed for a municipal offense, is not a debt, and therefore imprisonment may follow its nonpayment without violating the Constitution forbidding imprisonment for debt. [Ex parte Hollwedell, 74 Mo. 395.] So, when one is arrested on a charge of a municipal offense, he will be imprisoned pending his trial, unless he gives bail; and doubtless, if denied the right to bail, as granted by the Constitution to those accused of crime, he would be protected by the courts. So, doubtless, if prosecuted for such municipal offense as is also an offense against a State law (as in the case at bar) he could not be compelled to testify against himself. [Ex parte Carter, 166 Mo. 604.] So, doubtless, in such case, he would be entitled "to meet the witnesses against him face to face." So he would be presumed to be innocent; and so would his good character be evidence in his behalf. These are rights which do not exist in civil cases. And if it was error to give an instruction on reasonable doubt because this was a civil case, then it follows that it would be error in a like case, no matter how serious the consequences of conviction might be, to instruct that an accused was entitled to be presumed innocent; or that his good character should be considered; and furthermore, it would be error to refuse to compel him to testify against himself.

It would, therefore, seem to be clear that we interpret the ruling of the Supreme Court correctly in holding that where the object sought by the municipality is to punish a person for committing an offense

against its laws directed against things which are not things only wrong because prohibited, but are wrongs *malum in se,* the prosecution is of the nature of a criminal prosecution and the full reason upon which the rule of reasonable doubt is based, applies.

Municipalities may ordain laws forbidding and punishing the same act which is forbidden and punished by the state law. It is common knowledge that the former have ordinances against open adultery, assault and battery, disturbance of the peace, gambling, lotteries, and many other public wrongs, forbidden by the state law. No sound reason can be stated for denying an accused the benefit of an instruction on appeal to the circuit court or criminal court when charged by a municipality, when on trial for the same act, in the same court, he would be entitled to such instruction if charged by the state. It is not an uncommon charter power that cities, as in this case, may prescribe either fine or imprisonment in jail, or both, for a violation of an ordinance. [Ulrich v. City of St. Louis, 112 Mo. 138, 143.] The charter of Kansas City (page 163) grants such power. Now if two persons are charged with living in open adultery and one is prosecuted by the city while the other is charged by the state, the former may appeal to the criminal court, where he will find the other arraigned by the state. Is one to be denied an instruction on reasonable doubt, and, maybe, thereby convicted, while the other is granted such instruction and thereby acquitted? Is that not an incongruity which ought to be avoided?

There is a presumption of innocence which applies in favor of every one accused of the violation of law involving a public wrong, *malum in se.* To overcome this presumption there must be evidence sufficient to convince beyond reasonable doubt. [Lawson on Law of Presumptive Ev., sec. 505; 4 Elliott on Ev., sec. 2706.] Certainly it cannot make any difference

as to which branch of the government seeks to inflict the punishment.

Reasonable doubt is really founded on the presumption of innocence (Coffin v. United States, 156 U. S. 432, 459, 460), and the presumption itself is in favor of the life, liberty and good name of the citizen. It is aptly illustrated in a quotation by Justice White in the case just cited. Numerius was on trial before the Emperor Julian, and contented himself with simply denying his guilt, and there was not sufficient proof against him. His adversary, seeing that a failure of the accusation was inevitable, exclaimed: "Oh, illustrious Caesar! if it is sufficient to deny, what hereafter will become of the guilty?"—to which Julian replied: "If it suffices to accuse, what will become of the innocent?"

The rule requiring belief of guilt beyond a reasonable doubt, looks much to the serious consequences resulting from conviction,—not alone the punishment, but the humiliation, the disgrace and the future career of the accused are at stake. The natural instinct of the human heart is to take care that such results are not inflicted unless guilt is made so clear that, in reason, a mistake cannot be made. In the ordinary civil action to recover a debt owing from one person to another, the good or bad character of the parties is not in issue (except as to credibility as witnesses), but that cannot be said of many municipal offenses. Is a young woman, surrounded by unfortunate, accidental and embarrassing circumstances, who is prosecuted for the municipal offense of being an inmate of a bawdy house, to be deprived of the benefit of the presumption of innocence and of a reasonable doubt?

The mere fact that prosecutions for municipal offenses are called civil actions, does not say that the rule as to reasonable doubt cannot apply to them; for even though an action is strictly civil, it does not follow that the degree of proof must not be such as to

exclude all reasonable doubt. Thus, to establish a resulting, or implied, trust, the evidence must exclude all reasonable doubt. [Bradley v. Bradley, 119 Mo. 58; Mulock v. Mulock, 156 Mo. 431, and cases cited.] So proof of a promise to a deceased, which prevented his making a will, must be established in the same way. [Mead v. Robertson, 131 Mo. App. 185.] And so in other cases in equity, in avoidance of the Statute of Frauds. [Kirk v. Middlebrook, 201 Mo. 245, 289; Russell v. Sharp, 192 Mo. 270, 285.] And where it is sought to impeach a notary's certificate of acknowledgment to a deed, it has been ruled that the evidence must exclude reasonable doubt. [Gritton v. Dickerson, 202 Ill. 372.]

It may be, though it is not necessary to say, that there are cases of violations of municipal ordinances which only demand that degree of evidence required in ordinary civil cases, such as those ordained for purely municipal regulation, and which do not involve matters *malum in se*. Thus, regulations of awnings, signs, sweeping sidewalks at a certain time of day, regulating speed of vehicles and trains, and the great number of other regulations of acts innocent in themselves and the violation of which is wrong merely because prohibited. But of this we do not express an opinion.

In Peterson v. State, 79 Neb. 132, cited by the plaintiff, the charge was a violation of an ordinance regulating the speed of trains through a town, and it was held that since the act was not a misdemeanor under the laws of the state, and was not immoral, or, in itself criminal, an instruction on reasonable doubt need not be given. We have not such a case as that or any of those just mentioned. The offense charged here is not only a violation of the state law, but it is *malum in se*. The defendant is charged with the disturbance of the peace by quarrelling and fighting and by loud, offensive and indecent conversation. When

conviction is sought in the prosecution of such a charge as that (whether it be called criminal, quasi criminal, or civil), the citizen ought to have the benefit of the presumption of innocence, and he ought not to be disgraced, stigmatized and punished if the evidence leaves the jury in reasonable doubt of his guilt.

The question has rarely arisen in a case of this character, for the reason, perhaps, that the understanding and practice has been that such instructions should be given as of course. It is not improbable that a controlling reason for the legislation allowing appeals from municipal to state courts, is that the accused may have the protection of courts whose procedure allows his rights to be safeguarded by instructions. We have been cited to but one case of like kind in this state, and that is Town of Glenwood v. Roberts, 59 Mo. App. 167, in which this court held, in an opinion by Judge GILL, that such instruction should be given. The Judge, after referring to the reason for the rule requiring the guilt of the accused to be shown beyond a reasonable doubt, asks: "Why, then, should not this same solicitude for the liberty of the citizen, or this idea that it is better that ten guilty ones escape than punish one innocent, be applied in such cases as this as where the *state* is the party prosecuting? If, now, this defendant had been prosecuted for a misdemeanor under the general statutes where the like punishment would be visited as in case of violation of a municipal law, unquestionably he would have been entitled to an instruction telling the jury that his guilt must have been shown beyond a reasonable doubt; and if in the latter, why not in the former."

There was evidence in behalf of the city tending to prove that defendant's brother was on the streets of the city, "very badly under the influence of whisky," and that he was accompanied by two others, and that the city marshal asked defendant "if he woudn't take his brother home." Defendant himself testified that

when the marshal told the boys to keep still or he would "run them in," he volunteered to take his brother home. But it is of no particular difference which first made the suggestion, for it seems to be settled that defendant was to take his brother off the street and that he took hold of him and started away. There was evidence tending to show that he had gone but a few steps, peacefully getting his brother away, when the marshal ran up and overtook them, and struck at defendant with his club; that defendant partially warded of the blow, so that it only knocked off his hat, and that then the intoxicated brother knocked the marshal down and started to run, the marshal raising up with a drawn revolver and shooting at him several times, some of the shots going into stores nearby. Excitement followed and many people came upon the street. There was evidence tending to show that prior to this time defendant had not used any harsh or offensive language, or disturbed any one, but that afterwards, while being assaulted and while the marshal was attempting to kill his brother (for the marshal testified that: "I was doing the best job of shooting I could"), he was loud in the use of profane language. Taking the evidence in defendant's behalf, it is manifest that his profanity was indulged in, in the excitement of his protest and effort against the marshal's conduct.

The offense defendant's brother had committed was being drunk and using disorderly language on the streets. He was not arrested for that, but while defendant was taking him home, the marshal, according to his own testimony, ran after defendant for cursing him, and, it may be admitted, undertook to arrest him,—whereupon the intoxicated brother interfered,—resisted defendant's arrest,—by knocking the marshal down. He was thereby guilty of two offenses, one in resisting an officer who was undertaking to make an arrest for a misdemeanor, and the

other for assault and battery, both offenses being misdemeanors. He then began to flee. The most that can be said is that the marshal then undertook to arrest him for one or the other, or both, of these offenses, by firing upon him with his pistol. An officer cannot take a man's life who is fleeing from arrest for a misdemeanor. If he does, he is guilty of murder or manslaughter. Therefore, the marshal in attempting to kill defendant's brother, was guilty of an assault with intent to kill. [State v. Coleman, 186 Mo. 151, 162; Thomas v. Kinkead, 55 Ark. 502; Reneau v. State, 2 Lea (Tenn.), 720.] To run from arrest for a low degree offense, is not punishable by death. In judging of defendant's guilt, it should not be forgotten that, under our statute (Sec. 4451, R. S. 1909) he had the legal right to defend his brother from the officer's unjustifiable attempt on his life.

On account of such evidence, and the law applicable thereto, the trial court gave an instruction for defendant which plaintiff claims exonerated him if he uttered the offensive language after the marshal shot at his brother. It is true the word "thereafter" is used, which would mean, in some connection, after the affair was a past matter, but it is clear from the record that it was here used and was understood in the sense of not being before the offensive conduct charged against the marshal. At any rate we do not believe it materially affected the result.

These considerations lead us to conclude that the instruction does not justify a reversal of the judgment. In the stress of the situation of a man, himself unjustly assaulted with a club, and a rapid-fire revolver opened on his fast fleeing brother, it ought not to be expected that his choice of language would be as select, nor the modulation of his voice as perfect, as under less exciting and provoking circumstances it might have been.

Since the foregoing was written, we have been cited to King City v. Duncan, just decided by the Supreme Court (142 S. W. 246), where it is ruled that in prosecutions for municipal offenses, on appeal to the circuit court, the verdict must be unanimous; and that an accused is entitled to the presumption of innocence, and that he cannot be convicted unless the proof establishes his guilt beyond a reasonable doubt.

The judgment is affirmed. All concur.