**Jeff BRUNNER and Kimberly Moore, Appellants,**

v.

**CITY OF ARNOLD and American Traffic Solutions, Inc., Respondents.**

**No. ED 99034.**

Missouri Court of Appeals, Eastern District, Division One.

Dec. 17, 2013.

Application for Transfer to Supreme Court Denied Jan. 30, 2014.

Application for Transfer Denied April 29, 2014.

John G. Simon, Ryan A. Keane, St. Louis, MO, for Appellant.

Jane E. Dueker, Nicholas G. Frey. St. Louis, MO, for Respondent American Traffic Solutions, Inc.

William Dudley McCarter, Timothy J. Reichardt, Clayton, MO, for Respondent City of Arnold.

ROY L. RICHTER, Presiding Judge.

Jeff Brunner and Kimberly Moore (collectively, "Appellants"), on behalf of themselves and others similarly situated, appeal from the trial court's judgment sustaining the City of Arnold's and American Traffic Solutions, Inc.'s (collectively, "Respondents") separate and joint motions to dismiss. We reverse the trial court's dismissal of Appellants' Petition and remand the cause for further proceedings consistent with this opinion.

## I. BACKGROUND

This is yet another challenge to the validity and constitutionality of a municipal ordinance governing what are commonly referred to as "red light camera enforcement systems," and we take another hike through a legal and, unfortunately, political minefield. *See, generally, Smith v. City of St. Louis,* 409 S.W.3d 404 (Mo.App. E.D.2013); *Unverferth v. City of Florissant,* 2013 WL 4813851 (Mo.App. E.D. Sept.10, 2013); *Ballard v. City of Creve Coeur,* 419 S.W.3d 109 (Mo.App.E.D.2013); *Edwards v. City of Ellisville,* 426 S.W.3d 644, 2013 WL 5913628 (Mo.App. E.D. Nov. 5, 2013).[1]

### A. City of Arnold's Red Light Camera Enforcement System

On July 27, 2006, the City of Arnold ("City") enacted Ordinance No. 2.2 (Bill No. 2176) ("the Ordinance"), codified as City of Arnold, Missouri, Code of Ordinances ("Arnold Code") §§ 23–181 through 23–187. The Ordinance authorizes the installation and operation of an automated red light enforcement system in City "for the purpose of enforcing traffic control signal regulations as provided in section 23–173."[2] Arnold Code § 23–182. The Ordinance provides that the installed cameras take pictures of the intersection's steady red light, the vehicle proceeding through the red light, and the license plate of that vehicle. Arnold Code § 23–181(2). The Ordinance, however, expressly prohibits photographing the vehicle's occupants, particularly the driver. Arnold Code § 23–181(3).

To implement and operate City's red light camera enforcement system created by the Ordinance, City contracted with American Traffic Solutions, Inc. ("ATS").[3]

---

1. Recently, the Missouri Court of Appeals, Western District, also had the opportunity to weigh-in. *Damon v. City of Kansas City,* 419 S.W.3d at 162 (Mo.App. W.D.2013).

2. Section 23–173 of the Arnold Code prohibits a vehicle facing a steady red light from entering an intersection. Arnold Code § 23–173.

3. ATS's principal place of business is located in Arizona. ATS, a for-profit entity, is in the business of marketing, installing, operating,

For each citation paid, ATS receives approximately 33 percent of the levied "penalty (fine)." Arnold Code § 23–187.[4]

While ATS is responsible for the installation and operation of the red light camera enforcement system, the City Police Department is "responsible for the enforcement and administration" of the Ordinance, and is required to review the photographs generated by the automated red light enforcement system. Arnold Code § 23–184(a)–(b). Upon determining an Ordinance violation, the City Police Department is afforded the capacity to use any "legal means" to unearth any additional information necessary to complete the violation notice, in accordance with Missouri Supreme Court Rule 37 ("Notice of Violation"). Arnold Code § 23–184(b). The City Police Department is then required to forward the Notice of Violation to the City Prosecutor, wherein "on his or her [City Prosecutor's] information and belief, concludes that a violation of section 23–173 was committed," the City Prosecutor is directed to complete the Notice of Violation and "file the information or complaint with the municipal court, subject to the requirements of Missouri Supreme Court Rule 37." Arnold Code § 23–184(c). The municipal court clerk then issues a summons to motorists charged with violating the Ordinance by mailing the Notice of Violation, the photographs generated by the automated red light enforcement system and a copy of the supplemental viola-

tion notice ("Supplemental Violation Notice").[5] Arnold Code § 23–184(d). The photographs, generally, constitute the only evidence proffered by the municipality when prosecuting violations of the Ordinance.

The Ordinance creates a rebuttable presumption that the owner of the vehicle alleged to be in violation of Arnold Code § 23–173 "was the driver of the vehicle at the time and place the violation was captured" by the automated red light enforcement system. Arnold Code § 23–183. Upon a determination of guilt, the Ordinance provides for the imposition of a

> penalty (fine) ... [that is] the same as the penalty (fine)[6] for a finding of guilty for a violation of Section 23–173 where an automated red light enforcement system was not used. Except that no points will be assigned to the violator[']s driver[']s license when guilty of an automated red light enforcement violation.

Arnold Code § 23–187.

The recipient of the Notice of Violation (i.e., the *owner* of the vehicle) is informed that he or she may transfer liability to the individual responsible for driving the vehicle at the time of violation. City provides recipient/owner with an "Affidavit of Non–Responsibility" ("Affidavit") to complete if he or she was not the driver at the time of the violation. The Affidavit requires the recipient/owner to provide the name and address of the actual driver. After com-

---

and maintaining red-light camera products and services to local governments throughout the country.

**4.** ATS purportedly receives its 33 percent commission regardless of whether or not the alleged-Ordinance-offender is ultimately prosecuted for violating the Ordinance or some other Arnold Code violation.

**5.** The Supplemental Violation Notice must contain: (1) a statement that the images gen-

erated by the automated red light enforcement system will be submitted as evidence in municipal court for prosecution in violation of Arnold Code § 23–173; and (2) information explaining to the vehicle's owner how he or she may provide an exculpatory affidavit. Arnold Code § 23–184(e).

**6.** In the case in bar, the imposed "penalty (fine)" is $94.50.

pletion of the Affidavit, recipient/owner is instructed to mail the Affidavit to ATS's headquarters in Tempe, Arizona, not to the Arnold Municipal Court.

If the recipient of the Notice of Violation elects to pay the fine, the recipient may satisfy payment by mailing a check to the Arnold Municipal Court or may pay through ATS's website.

### B. Jeff Brunner's and Kimberly Moore's Alleged Violations of the Ordinance

In September 2010, Jeff Brunner ("Brunner") received a Notice of Violation for allegedly running a red light in City as detected by the automated red light enforcement system. The Notice of Violation (and Supplemental Notice of Violation) provided Brunner with information regarding his alleged Ordinance violation, the images generated by the automated red light enforcement system, a statement that said images "will be submitted as evidence" in municipal court, instructions on the "Transfer of Liability"[7] and the accompanying Affidavit, an amount due of $94.50, and a warning that Brunner's "failure to appear in court at the time specified on this citation or otherwise respond to this Notice of Violation as directed may result in a warrant being issued for your arrest." Subsequently, Brunner paid the $94.50 "penalty (fine)."

In October 2010, Kimberly Moore ("Moore") received a Notice of Violation for allegedly running a red light in City as detected by the automated red light enforcement system. Moore's Notice of Violation was identical to that of Brunner's Notice of Violation. However, unlike Brunner, Moore never paid the $94.50 "penalty (fine)."

### C. Pertinent Procedural Background

In September 2011, Appellants filed an amended class action petition ("Petition") challenging the Ordinance on numerous grounds. The Petition includes two subclasses of plaintiffs. Subclass 1, consisting of Brunner and others similarly situated, received a Notice of Violation pursuant to the Ordinance and paid the "penalty (fine)" without municipal court proceedings ("Subclass 1"). Subclass 2, consisting of Moore and others similarly situated, received a Notice of Violation but have not paid the "penalty (fine)," elected to forgo municipal court proceedings, and currently face potential prosecution ("Subclass 2"). Appellants' seven-count, purported class

---

7. The Transfer of Liability included in the Notice of Violation reads as follows:

**TRANSFER OF LIABILITY:** If, at the time and place of the violation, the motor vehicle shown was being operated by a person other than the Owner, and if the Owner is a natural person, the Owner may transfer liability for the violation to the person who was operating the motor vehicle at that time and place, if the owner submits to the City by Affidavit of Non–Responsibility to the address or fax shown at the bottom of the Affidavit.

(a) the name and current address of the person operating the vehicle at the time and place of the violation.; [sic]

(b) who was the lessee of the vehicle at the time of the violation, if the vehicle was rented or leased from a person in the business of renting or leasing motor vehicles at that time; or

(c) who was the subsequent owner of the motor vehicle, if ownership of the vehicle was transferred by the owner before the time of the violation.

Left unanswered are those questions regarding vehicles that are owned and/or registered to governmental entities, business entities, trusts, or other owners who are not "natural persons." Does Arnold prosecute these "not natural person" owners? To what address is the Notice of Violation sent? How do these "not natural person" owners transfer liability? Who is responsible for payment? Furthermore, when the vehicle is registered to joint owners, why is the Notice of Violation only mailed to one of the joint owners? Why is only one joint owner liable?

action Petition seeks declaratory relief, injunctive relief and damages.

In Count I, all Appellants seek a declaratory judgment that the Ordinance is contrary to numerous Missouri statutes and/or the Missouri Constitution. Specifically, Appellants dispute the validity and constitutionality of the Ordinance and seek a declaratory judgment on:

(a) whether the Ordinance is void as a matter of law because the Ordinance conflicts with Missouri state laws (particularly Sections 304.271.1 and 304.281.1) governing traffic;

(b) whether City had the authority to enact the ordinance;

(c) whether the Ordinance is void as a matter of law because it conflicts with Missouri state laws (particularly Sections 302.225, 302.302, and 302.010(12)) establishing and governing driver's license point system;

(d) whether Respondents circumvented Missouri law by reclassifying Ordinance violations as "non-moving infractions;"

(e) whether it is lawful for City to create a rule of evidence by establishing liability based upon vehicle ownership;

(f) whether Respondents can lawfully prosecute vehicle owners if the vehicle owner was not operating the vehicle at the time of the offense;

(g) whether the Ordinance and/or Respondents' conduct violates Article I, Section 19 of the Missouri Constitution by compelling testimony to prove innocence;

(h) whether the Ordinance and/or Respondents' conduct violates Article I, Section 10 of the Missouri Constitution in depriving Appellants of life, liberty or property without due process of law;

(i) whether Brunner and Subclass 1 are entitled to recover payments made pursuant to the Ordinance if the Ordinance is found to be invalid or unconstitutional.

In Count II, Brunner and Subclass 1 allege unjust enrichment against City because the Ordinance is void, invalid and/or unconstitutional. Therefore, Brunner and Subclass 1 seek a return (restitution) of their fines and penalties paid to City and all legal and equitable remedies available.

In Count III, all Appellants seek all legal and equitable remedies available for City's alleged violation of Article I, Section 19 of the Missouri Constitution, which prohibits self-incrimination. Appellants aver that the Ordinance compels the accused to testify by sworn statement or appearance in municipal court.[8]

In Count IV, all Appellants seek all legal and equitable remedies available for City's alleged violation of Article I, Section 10 of the Missouri Constitution, which prohibits the deprivation of life, liberty, or property without due process of law. Appellants claim that the Ordinance authorizes a taking of property and potential imprisonment without due process of law by establishing an unreasonable presumption of guilt and shifting the burden of proof.[9]

In Count V, all Appellants seek legal damages available for Respondents' "civil conspiracy" to generate revenue illegally. For support, Appellants assert, *inter alia,* that Respondents "knew and discussed" the probability of the Ordinance's unconstitutionality and invalidity.

---

8. While Count III is duplicative of Count I, the relief sought is disparate.

9. While Count IV is duplicative of Count I, the relief sought is disparate.

In Count VI, Brunner and Subclass I allege unjust enrichment against ATS because the Ordinance is void, invalid and/or unconstitutional. Therefore, Brunner and Subclass 1 seek a return (restitution) of their fines and penalties paid to ATS and all legal and equitable remedies available.

In Count VII, all Appellants seek all legal damages available for Respondents' alleged fraud perpetrated by Respondents in enacting, enforcing, and marketing the Ordinance.

Respondents filed joint and separate motions to dismiss. The trial court sustained Respondents' motions and dismissed all of Appellants' claims with prejudice, but without detailed explanation. It is from this judgment Appellants now appeal.

We will provide additional facts, where relevant, in the course of our discussion.

## II. DISCUSSION

Appellants raise five points on appeal.[10] Because the trial court offered little specificity as to its reasons for dismissing the Petition, each of Appellants' points on appeal respond to Respondents' arguments set forth in their joint and separate motions to dismiss. *Fenlon v. Union Elec. Co.*, 266 S.W.3d 852, 854 (Mo.App. E.D. 2008) ("Where, as here, the trial court does not provide reasons for its dismissal of the petition, we presume the dismissal was based on at least one of the grounds stated in the motion to dismiss, and we will affirm if dismissal was appropriate on any grounds stated therein."). A complete recitation of each point relied on is unnecessary for a full understanding of this Court's disposition. We briefly summarize the litigants' points relied on:

(1) Appellants' Point I & Respondents' Response II: does the Ordinance conflict with state law?

(2) Appellant's Point II & Respondents' Response III: did City have authority to enact the Ordinance?

(3) Appellant's Point III & Respondents' Response IV: does the Ordinance violate alleged-offenders' due process rights?

(4) Appellants' Point IV & Respondents' Response I: do Appellants have standing, have Appellants waived their constitutional claims, and are Appellants estopped from bringing their claims?

(5) Appellants' Point V & Respondents' Response V: did the trial court err in dismissing Appellants' unjust enrichment claims as against City and ATS?

The points relied on and the arguments presented by the litigants will be addressed in greater detail within our analysis.

### *Standard of Review*

█ This Court's review of a trial court's judgment granting a motion to dismiss is *de novo*. *Stein v. Novus Equities Co.*, 284 S.W.3d 597, 601 (Mo.App. E.D. 2009). Since the trial court did not state its reasons for sustaining the motion to dismiss, we may affirm the trial court's dismissal on any ground before the trial court in the motion to dismiss, even if the trial court relied on other grounds in dis-

---

**10.** On Appeal, Appellants abandon certain claims in their Petition—specifically, Count V (civil conspiracy) and Count VII (fraud)—by not raising any claim of error in their points relied on regarding these claims. *Kabir v. Mo. Dept. of Soc. Servs.*, 845 S.W.2d 102, 102– 03 (Mo.App. W.D.1993) ("When an issue is presented and decided by the trial court, an appellant abandons any claim of error as to an issue not raised in its points relied on in its appellant's brief").

missing the claim. *McCarthy v. Peterson,* 121 S.W.3d 240, 243 (Mo.App. E.D.2003).

"A motion to dismiss is an attack on the petition and solely a test of the adequacy of the pleadings." *Rychnovsky v. Cole,* 119 S.W.3d 204, 208 (Mo.App. W.D.2003). When this Court reviews the dismissal of a petition for failure to state a claim, we treat all averments alleged in the petition as true and liberally grant the plaintiff all reasonable inferences therefrom. *Reynolds v. Diamond Foods & Poultry, Inc.,* 79 S.W.3d 907, 909 (Mo. banc 2002); *see also Chochorowski v. Home Depot U.S.A., Inc.,* 295 S.W.3d 194, 197 (Mo.App. E.D.2009) ("When we consider whether a petition fails to state a claim upon which relief can be granted, we accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and we construe all allegations favorably to the pleader."). We neither weigh nor determine the credibility or persuasiveness of the factual allegations, but, instead, review the petition in an almost academic manner "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Chochorowski,* 295 S.W.3d at 197 (quoting *Nazeri v. Mo. Valley Coll.,* 860 S.W.2d 303, 306 (Mo. banc 1993)). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Lynch v. Lynch,* 260 S.W.3d 834, 836 (Mo. banc 2008).

### Analysis

### Standing, Waiver & Estoppel

■ Standing is a threshold question which must be addressed prior to the merits of a litigant's claim, because if a party lacks standing a court has no jurisdiction to grant the relief requested and the case must be dismissed. *Miller v. City of Arnold,* 254 S.W.3d 249, 252 (Mo.App. E.D. 2008); *see also State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 227 n. 6 (Mo. banc 1982) (standing is considered "a jurisdictional matter antecedent to the right of relief."). As such, we begin by addressing the issues emanating from Appellants' fourth point on appeal: standing, waiver, and estoppel.

Respondents argued in their motions to dismiss and now on appeal that Appellants are barred from bringing Count I of the Petition (declaratory judgment action challenging the validity and constitutionality of the Ordinance on numerous statutory and constitutional grounds), Count III of the Petition (the Ordinance violates Article I, Section 19 of the Missouri Constitution, which prohibits compelling a defendant to testify), and Count IV of the Petition (the Ordinance violates Article I, Section 10 of the Missouri Constitution, which prohibits deprivation of "life, liberty or property without due process of law") because Appellants lack standing, have waived their constitutional claims, and/or Appellants are estopped from bringing said claims. Appellants claim the trial court erred in dismissing the Petition, because Appellants have standing, have not waived their constitutional claims, and are not estopped from bringing these claims.

As many of the litigants' arguments commingle these three different legal principles—standing, waiver, and estoppel—we address these issues individually to facilitate comprehension.

### A. Standing

■ "Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve Sch. Dist. R II v. Bd. of Aldermen of City of Ste. Genevieve,* 66 S.W.3d 6, 10 (Mo. banc 2002). Simply, standing seeks to discover whether the individual request-

ing relief is able to do so. *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002).

 To successfully assert standing, an individual must have a "legally protectable interest." *St. Louis Ass'n of Realtors v. City of Ferguson*, 354 S.W.3d 620, 623 (Mo. banc 2011). "A legally protectable interest exists only if the plaintiff is affected directly and adversely by the challenged action or if the plaintiff's interest is conferred statutorily." *Id.* In Missouri, "[a]ny party who alleges they are directly adversely affected by an ordinance may raise the question of the unconstitutionality or invalidity of the ordinance." *State ex rel. City of St. Louis v. Litz*, 653 S.W.2d 703, 706 (Mo.App. E.D.1983). An individual seeking to challenge the validity of an ordinance has standing if standing "is conferred by statute or another applicable ordinance or if the party can demonstrate that he [or she] is directly and adversely affected by the ordinance." *City of Bridgeton v. Ford Motor Credit Co.*, 788 S.W.2d 285, 290 (Mo. banc 1990); *see, e.g., Dae v. City of St. Louis*, 596 S.W.2d 454, 455 (Mo.App. E.D.1980) (holding that two appellants had standing to challenge the validity of an ordinance because those two appellants had been charged with violation of the ordinance).

### 1. Does Brunner have standing to bring Counts I, III & IV of the Petition?

On appeal and in their joint and separate motions to dismiss, Respondents contend (1) Brunner lacks standing to pursue his claim that the Ordinance conflicts with state law because he did not claim any harm as a result of the alleged conflict, and (2) Brunner lacks standing to pursue his challenge as to the constitutionality of the Ordinance because Brunner elected not to avail himself of the procedures [11] available to him.

### (i) Brunner has standing to pursue his claim that the Ordinance conflicts with state law (Count I of the Petition).

Respondents claim Brunner lacks standing to pursue his claim that the Ordinance conflicts with state law because he was not adversely affected by the Ordinance. We find Brunner has established standing to pursue his claim that the Ordinance conflicts with state law, pursuant to Count I of the Petition, in two ways.

 First, the Petition adequately pleads that Brunner was directly affected by the Ordinance. *See City of Bridgeton, supra.* The allegations in the Petition include Brunner's receipt of a Notice of Violation and his deprivation of property in the form of a $94.50 fine/penalty:

144. Plaintiffs and [Subclass 1] had, and have, an established constitutional right not to be deprived of their personal property, in the form of fines paid to Defendant Arnold, without due process of law.

Our decision finding Brunner has standing is reinforced by the decisions in recent analogous cases. In both *Unverferth* and *Edwards*, those individuals who had received a notice of violation pursuant to similar red light camera enforcement system ordinances, paid the fines to avoid further legal action (without participating in municipal court proceedings), and, finally, continued to pursue their challenges as to whether the red light camera ordinances conflicted with state law were held to have standing because they were adversely affected by the ordinances at issue. *Unverferth*, 419 S.W.3d at 86; *Edwards*, 426 S.W.3d at 652–54, 2013 WL 5913628, at

---

11. Brunner does not plead, and there is no evidence otherwise, that Brunner participated or attempted to participate in the Arnold Municipal Court process.

*4–*5; *see also Walker v. Toledo*, 994 N.E.2d 467, 472 (Ohio App.2013) (individual who allegedly violated red light camera ordinance and then paid the fine had standing to challenge the constitutionality of the ordinance because the "monetary injury produces sufficient interests in the operation of the ordinance").

Just as the litigants in *Unverferth* and *Edwards*, Brunner received a Notice of Violation pursuant to the Ordinance and paid a $94.50 fine to avoid further legal action (i.e., a warrant for Brunner's arrest). Brunner and Subclass 1 are, therefore, held to have standing to challenge the validity of the Ordinance under Count I of the Petition. *See, e.g., Unverferth*, 419 S.W.3d at 86; *Edwards*, 426 S.W.3d at 652–54, 2013 WL 5913628, at *4–*5.

■ Second, in Count I of the Petition, Brunner seeks declaratory relief pursuant to Section 527.020. The Declaratory Judgment Act, in pertinent part, provides:

> Any person … whose rights, status or other legal relations are affected by a statute, *municipal ordinance* … may have determined any question of construction or validity arising under the … statute, ordinance … and obtain a declaration of rights, status or other legal relations thereunder."

Section 527.020 (emphasis added). Accordingly, standing is also conferred by the plain language of the statute under which Count I of the Petition is brought. *See Miller v. City of Manchester*, 834 S.W.2d 904, 906 (Mo.App. E.D.1992).

Therefore, we hold that Brunner has standing to pursue his claim that the Ordinance conflicts with state law.

*(ii) Brunner has standing to pursue his challenge as to the constitutionality of the Ordinance (Counts I, III & IV of the Petition).*

■ Next, Respondents argue Brunner lacks standing to pursue his challenge as to the constitutionality of the Ordinance because he did not avail himself of the procedures afforded by the Ordinance, in that Brunner did not contest the Ordinance in Arnold Municipal Court, but merely paid the $94.50 penalty.[12] Respondents' argument is one of failure to exhaust municipal court remedies. Conversely, Appellants claim Brunner possesses standing to challenge the constitutionality of the Ordinance, pursuant to Counts I, III and IV of the Petition, because he need not avail himself of municipal court procedures which are invalid and unconstitutional.

First, we note that Appellants do not raise constitutional due process arguments regarding any alleged deficiencies of the Notices of Violation so received. Thus, *Unverferth* offers Appellants little support, in that in *Unverferth*, the plaintiff was found to have standing to pursue her constitutional challenge (even though the plaintiff did not avail herself to the procedures in municipal court) because the plaintiff's due process arguments were not "limited to an attack on the procedures by which [the plaintiff] could challenge the Notice of Violation." *Unverferth*, 419 S.W.3d at 87. The *Unverferth* plaintiff's due process violations encompassed the inadequacies relating to her notice of violation. *Id.* Here, because Appellants do not challenge any alleged due process violations relating to their Notices of Violation, no standing is conferred upon Brunner under the holding of *Unverferth. Id.*

---

12. Many of the litigants' arguments regarding Brunner's lack of standing to pursue his constitutional claims expounded in Counts I, III and IV of the Petition also include waiver and estoppel arguments; we address those more fully, *infra*.

Nevertheless, we hold Brunner has established standing to challenge the constitutionality of the Ordinance, pursuant to Counts I, III and IV of the Petition, in two ways: (1) the municipal court lacked subject matter jurisdiction; and (2) the proceedings transacted via the Ordinance are void because Arnold exceeded its authority in enacting an unconstitutional ordinance.

In this Court's most recent red light camera case, we held that the City of Ellisville's red light camera ordinance ("Ellisville Ordinance") conflicted with state law for three reasons:

(1) The Ellisville Ordinance conflicted with Section 304.281 in that the Ellisville Ordinance regulated the same conduct as prescribed by Section 304.281 in contravention of Section 304.120.3. *Edwards*, 426 S.W.3d at 663, 2013 WL 5913628, at *16 ("We find that a clear conflict exists between the [Ellisville] Ordinance and state law ... The [Ellisville] Ordinance unmistakably permits what the state statute [Section 304.281] prohibits—prosecution and penalization of persons who are neither drivers nor pedestrians for running a red light."). (2) The Ellisville Ordinance conflicted with Section 302.225 because the Ellisville Ordinance fails "to require the municipal court to report a violation of the [Ellisville] Ordinance as a moving violation to the director of revenue for the assessment of points[,]" thereby permitting what state law prohibits—"a moving violation without the assessment of points." *Id.* at 99, 2013 WL 4813851, at *17. (3) The Ellisville Ordinance conflicted with Section 302.302 in that the Ellisville Ordinance did not assess two points to the driver's license of any person who violates the Ellisville Ordinance, but, rather, categorized the violation as a "non-moving" violation. *Id.*

Because this Court found that the Ellisville Ordinance conflicted with state law, we held "[a]s a matter of law, this conflict renders the [Ellisville] Ordinance *void and unenforceable.*" *Id.* (emphasis added); *see also City of Kirkwood v. City of Sunset Hills*, 589 S.W.2d 31, 35 (Mo.App. E.D. 1979) ("The law in this state is that an ordinance which contravenes the statutes of Missouri is void."). Likewise, as discussed, *infra*, we too find this Ordinance—which is similar to that of the Ellisville Ordinance—void and unenforceable. *Edwards*, 426 S.W.3d at 661–65, 2013 WL 5913628, at *13–*17.

"The effect of the ordinance being in violation of the state statute is that the ordinance is 'void and unenforceable *ab initio.*'" *Levinson v. City of Kansas City*, 43 S.W.3d 312, 320 (Mo.App. W.D.2001) (quoting *Armco Steel v. City of Kansas City*, 883 S.W.2d 3, 7 (Mo. banc 1994)). Thus, "a void ordinance is equivalent to none at all[,]" thereby rendering all court proceedings transpiring under said ordinance void as well. *City of St. Louis v. Handlan*, 242 Mo. 88, 145 S.W. 421, 423–24 (1912) ("avoid ordinance is equivalent to none at all; and that where a court proceeding cannot go on without an ordinance ... a valid one is essential to the *court's jurisdiction*") (emphasis added) (the Supreme Court of Missouri could not reach other points on appeal because the ordinance was invalid). Therefore, a municipal court—having jurisdiction only to try violations of municipal ordinances and not state law—has no subject matter jurisdiction, *ab initio*, pursuant to a void and unenforceable ordinance that conflicts with state law. *Williams v. Williams*, 932 S.W.2d 904, 905 (Mo.App. E.D.1996) ("A judgment is void from its inception if the court that rendered judgment did not have jurisdiction."); Section 479.020.1 (municipal courts have jurisdiction only to try violation of

municipal ordinances and do not have jurisdiction to try violations of state law); *see, e.g., State v. Jenkins,* 295 Kan. 431, 284 P.3d 1037, 1044 (2012) (a city ordinance that conflicts with a state statute does not vest the municipal court with jurisdiction); *State v. Chacon,* 273 S.W.3d 375, 381 (Tex.App.2008) (municipal court had no jurisdiction over ordinance that conflicted with state law); *see also Newsom v. Starkey,* 572 S.W.2d 29, 30 (Tex. Civ.App.1978) ("a void statute is no law and confers no rights, bestows no power on anyone, and justifies no acts performed under it."); *Dean Milk Co. v. City of Aurora,* 404 Ill. 331, 88 N.E.2d 827, 831 (1949) (where an ordinance is void, the ordinance is inoperative as though it had never been enacted). Inasmuch as the Ordinance is deemed void and unenforceable based upon the Ordinance's conflict with state law, the Arnold Municipal Court had no subject matter jurisdiction from inception, and all the judicial proceedings based on the Ordinance are consequently void. *Travis v. Contico Intern., Inc.,* 928 S.W.2d 367, 370 (Mo.App. E.D.1996) (a void judgment is a legal nullity).

Therefore, finding the Arnold Municipal Court lacked subject matter jurisdiction over the void and unenforceable Ordinance, we hold that Brunner was not required to subject himself to invalid procedures in municipal court and the judgment (i.e., admission of guilt by a paying fine) rendered therein is void. *Taylor v. Taylor,* 47 S.W.3d 377, 385 (Mo.App. W.D. 2001) ("A judgment is void if the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process.") (citations and internal quotation marks omitted); *see also State ex rel. Rhine v. Montgomery,* 422 S.W.2d 661, 663 (Mo.App.1967) ("A void judgment is entitled to no consideration and *any kind of proceeding* to cancel it is proper.") (internal citations omitted) (emphasis added); *Van Harken v. City of Chicago,* 305 Ill. App.3d 972, 239 Ill.Dec. 223, 713 N.E.2d 754, 758 (1999) ("if the complaint attacks the constitutionality of a statute or ordinance on its face, the plaintiff need not exhaust all of his administrative remedies before seeking judicial relief"). After Brunner's Ordinance violation had been filed in Arnold Municipal Court, that municipal court should have dismissed the action for lack of subject matter jurisdiction, *sua sponte.* Mo. Const. Art. V, Section 14; *Bacon v. Dir. of Revenue, State of Mo.,* 948 S.W.2d 266, 267 (Mo.App. E.D. 1997) ("When a court lacks subject matter jurisdiction, it cannot take any other action besides its inherent power to dismiss. Furthermore, any action taken by a court lacking subject matter jurisdiction is *null and void*") (internal citations omitted) (emphasis added).[13] Accordingly, Brunner and Subclass 1 have standing to challenge the constitutionality of the Ordinance in circuit court even though he did not avail himself of the procedures in municipal court. *See, e.g., City of Miami v. Keton,* 115 So.2d 547, 552–554 (Fla.1959) (where approximately 190,000 individuals paid fines to the city as a result of a summons for traffic violations without necessity of going to court or being tried, a class action by one member to seek return of fines imposed for violation of city ordinances on grounds the city had no authority over

---

**13.** Although Brunner paid the fine/penalty and entered a "guilty plea," such "guilty plea" is also void *ab initio,* because the Arnold Municipal Court lacked subject matter jurisdiction to accept said "guilty plea." *Suglio v. Dir. of Revenue,* 879 S.W.2d 753, 754 (Mo.App. E.D.1994) ("Subject matter jurisdiction cannot be waived or agreed to. A confession of judgment does not vest a court with subject matter jurisdiction which is otherwise lacking.") (internal citations omitted).

traffic violation could be maintained, but individuals were barred from recovery due to the voluntary payment doctrine).

Furthermore, unlike *Edwards,* we find Arnold has enacted an unconstitutional Ordinance, as more fully examined, *infra.* An ordinance that a municipality has no power to enact is an act of usurpation and all proceedings under it are void. 6 McQuillin Mun. Corp. § 20:14 (3d ed.). Accordingly, Brunner was not required to subject himself to void and unconstitutional proceedings in municipal court, and, therefore, has standing to challenge the constitutionality of the ordinance in circuit court, although he did not avail himself of the procedures in Arnold Municipal Court.

We hold that Brunner has standing to pursue his claim that the Ordinance conflicts with state law.

### 2. *Moore has standing to bring Counts I, III & IV of the Petition.*

On appeal and in their joint and separate motions to dismiss, Respondents contend Moore cannot state a claim for declaratory and injunctive relief because Moore has an adequate remedy at law by way of a municipal court proceeding. Appellants argue the trial court erred in dismissing Moore's claims for declaratory and injunctive relief, pursuant to Counts I, III and IV of the Petition, because no adequate remedy at law exists under which Moore could bring her claims. We agree with Appellants and reverse the trial court's dismissal.

▌ As discussed, *supra,* under our analysis of Brunner's standing and by our holding in *Edwards,* we determined that the municipal court lacked subject matter jurisdiction to institute judicial proceedings under the void and unenforceable Ordinance. Thus, the presence of an ade-

quate remedy at law is immaterial where a court patently and unambiguously lacks jurisdiction to act. Accordingly, Moore and Subclass 2, need not subject themselves to municipal court proceedings for an alleged violation of a void and unenforceable municipal ordinance because "equity will enjoin the enforcement of an invalid ordinance to protect the individual citizen from multiple prosecutions, or to *prevent irreparable harm to his [or her] property rights....*" *Browning v. City of Poplar Bluff* 370 S.W.2d 179, 183 (Mo.App. 1963) (emphasis added); *see also Home Shopping Club, Inc. v. Roberts Broadcasting Co.,* 989 S.W.2d 174, 180 (Mo.App. E.D.1998) (an injunction is an equitable remedy); *Estate of Cantonia v. Sindel,* 684 S.W.2d 592, 595 (Mo.App. E.D.1985) ("when concurrent jurisdiction exists, i.e. law and equity, equitable principles can be invoked despite the existence of an adequate remedy at law").

Finding Moore has no adequate remedy at law, we, therefore, hold that Moore has standing to pursue her claims for declaratory and injunctive relief delineated in Counts I, III and IV of the Petition; *see also Damon,* 419 S.W.3d at 176–77 (finding standing for those plaintiffs who had not yet paid the fine and never partook in municipal court proceedings, in part, because ATS would not have been a party in municipal court).

### B. *Waiver: Appellants have not waived their constitutional claims posited in Counts I, III & IV of the Petition.*

▌ Appellants next challenge the trial court's finding that Brunner waived his constitutional due process claims because he did not assert such claims at the municipal court proceedings to which he was entitled.[14] Because Brunner did not in-

14. Respondents do not assert that Moore has

waived her constitutional claims. Neverthe-

voke Arnold Municipal Court proceedings, Brunner did not raise any challenge to the constitutionality of the Ordinance before the municipal court. Respondents, therefore, argue Brunner has waived the constitutional matters raised in Counts I, III and IV of the Petition.

■ In order to prevent surprise to the opposing party and to permit the trial court the opportunity to adequately and fairly address constitutional claims, *Willits v. Peabody Coal Co., LLC*, 400 S.W.3d 442, 449 (Mo.App. E.D.2013) (citing *Land Clearance for Redevelopment Auth. of Kansas City, Mo. v. Kansas Univ. Endowment Ass'n*, 805 S.W.2d 173, 175 (Mo. banc 1991)), it is firmly established that a constitutional question must be presented at the earliest possible moment that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived. *MB Town Center, LP v. Clayton Forsyth Foods, Inc.*, 364 S.W.3d 595 (Mo.App. E.D.2012). Constitutional violations not raised at the earliest possible opportunity are deemed waived. *State ex rel York v. Daugherty*, 969 S.W.2d 223, 224 (Mo. banc 1998).[15] "The critical question in determining whether waiver occurs is whether the party affected had a *reasonable opportunity* to raise the unconstitutional act or statute by timely asserting the claim before a *court of law*." *Daugherty*, 969 S.W.2d at 225 (emphasis added).

In applying the directive of *Daugherty*, we consider whether Brunner had a "reasonable opportunity" to raise his constitutional claims before a "court of law." *See, Unverferth*, 419 S.W.3d at 88. Because we have found that Arnold Municipal Court lacked subject matter jurisdiction, Brunner possessed *no opportunity* to present his constitutional claims before any court of law until this action was filed in the Circuit Court of Jefferson County. *Daugherty*, 969 S.W.2d at 225 ("One exception to the waiver doctrine usually noted is where there was a lack of subject matter jurisdiction in the forum where the waiver occurred.")

*Unverferth* and *Smith* offer no assistance to Appellants as it was held in those cases that the doctrine of waiver did not preclude the plaintiffs, who had paid their fines in municipal court (without availing themselves to the proceedings in municipal court) because the deficient notices of violation deprived the plaintiffs of a reasonable opportunity to raise the constitutionality of the ordinances in municipal court. *Unverferth*, 419 S.W.3d at 88; *Smith*, 409 S.W.3d at 412–13; see *also Damon*, 419 S.W.3d at 177. Here, as aforementioned, Appellants did not challenge any deficiencies in the Notices of Violation.

In *Edwards*, a very similar case, those plaintiffs who had paid the fine without availing themselves to the procedures in municipal court and whose notices of violation were not deficient, were held to have

less, because we find Moore has standing, our analysis applies equally to all Appellants.

15. Conflicting cases emanate from our Missouri courts regarding whether constitutional questions must first be raised in municipal court. In one line of cases, which have never been overtly overruled, "failure to raise constitutional questions in municipal court is not considered a waiver of the same." *State ex rel. Kansas City v. Meyers*, 513 S.W.2d 414, 418 (Mo. banc 1974); *see also Kansas City v.*

*Hammer*, 347 S.W.2d 865, 868 (Mo.1961) (the invalidity of an ordinance "on constitutional grounds goes to the subject matter of the prosecution and may be raised at any stage of the proceedings, even by a collateral attack after conviction."). In the other line of cases are those which require constitutional questions be raised at first opportunity as recognized, *supra*. However, because this case does not call for such, we reserve reconciliation of these cases for a later time.

waived their constitutional claims because they did not bring them at first opportunity, i.e., in municipal court. *Edwards,* 426 S.W.3d at 654–56, 2013 WL 5913628, at*6–*7. However, *Edwards* did not find the municipal court lacked subject matter jurisdiction; we do.

Therefore, Appellants are not deemed to have waived their challenge as to the constitutionality of the Ordinance because they were never presented with an opportunity to so do.

## C. Estoppel: Appellants are not estopped from bringing their constitutional claims advanced in Counts I, III & IV of the Petition.

■■■ Finally, Respondents also argued in their separate and joint motions to dismiss and now on appeal that Brunner should be estopped from bringing his claims, advanced in Counts I, III and IV of the Petition, because he accepted his conviction upon payment of the fine without subjecting himself to the municipal court proceedings or a trial *de novo.*[16]

In support of their argument that Brunner should now be estopped from asserting his constitutional claims, Respondents primarily rely upon *State ex rel. York v. Daugherty,* 969 S.W.2d 223 (Mo. banc 1998), which in turns relies upon *Tremayne v. City of St. Louis,* 320 Mo. 120, 6 S.W.2d 935 (1928). We believe a discussion of both cases is required.

In *Tremayne,* a property owner ("Owner") brought a tort action for consequential damages ("Tort Action") against the City of St. Louis ("City") for damages alleged to have been caused by the grading of a street upon which the Owner's property abutted. *Tremayne,* 6 S.W.2d at 936. Prior to the commencement of the Tort Action, the City commenced, and the par-

ties had adjudicated, a condemnation suit to change the grade of the street. *Id.* In the condemnation proceeding, the court found "special benefits" (i.e., Owner had benefited, rather than being damaged from the grading of the street) in a certain dollar amount, which Owner subsequently paid. *Id.* Owner never sought appellate review from that condemnation proceeding. *Id.* In the Tort Action, Owner argued that the grading of the street occurred prior to the final judgment of the condemnation proceeding, and, thus, Owner should be entitled to damages sounding in tort. *Id.* The City argued Owner's action was *res judicata* and the amount paid by Owner was not subject to collateral attack. *Id.* at 937.

The Supreme Court of Missouri found that Owner should have brought his action sounding in tort in the condemnation suit, because Owner had notice of the hearing, paid the judgment levied, and took no appeal. *Id.* at 944. Accordingly, Owner was "estopped from denying the validity of such [condemnation suit] judgment" because he "acquiesced in the judgment by paying the same." *Id.* at 946. In so holding, the Supreme Court further stated:

It has often been said that a void judgment is no judgment; that it may be attacked directly or collaterally. [A. C] Freeman, in work on Judgments uses this language: "A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it, and all claims flowing out of it, are void." This is true, in a general sense; yet, notwithstanding, a party to

---

**16.** Respondents do not assert that Moore is estopped from bringing her claims. Never-

theless, because we find Moore has standing, our analysis applies equally to all Appellants.

such a judgment may voluntarily perform it, by paying the amount adjudged against him, and, when paid, no inquiry will be made as to the validity of the judgment; or he may perform the acts required by a void decree, or accept its benefits, and thereby estop himself from questioning the decree. In other words, a party to a void judgment or decree may be estopped from attacking it either directly or indirectly. Suppose a judgment is for a money demand, justly due, and the record shows that it was rendered without having jurisdiction of the person of the defendant by the service of process upon him, and he voluntarily satisfies the judgment. That is an end of the controversy.

*Id.* (quoting *Mohler v. Shank's Estate*, 93 Iowa 273, 61 N.W. 981, 984 (Iowa 1895) (quoting in part Freeman on Judgments § 117 (4th ed. 1892))).

Seventy years later, in *Daugherty*, the Missouri Supreme Court held that estoppel precluded former spouses from challenging, as unconstitutional, a "judgment" of dissolution of marriage solely because a family court commissioner had signed it, in that the former spouses failed to utilize the statutory procedures available for judicial review. *Daugherty*, 969 S.W.2d at 224–25. In so holding, that court noted that the estoppel doctrine is applicable even to a void judgment when a party accepts both the "burdens and benefits" of that void judgment. *Id.* at 225. To support its holding, the Supreme Court relied upon and quoted the aforementioned language from *Tremayne*. *Id.; see also Matter of Tapp's Estate*, 569 S.W.2d 281, 285 (Mo. App.1978) ("One who has accepted and retained the benefits of a judgment (or decree) is estopped to deny, on any ground, the validity thereof, or any part thereof, or any of its burdensome consequences, even where the invalidity arises

from want of jurisdiction over the person or over the subject matter.").

Recently, this Court, in *Edwards*, relied upon *Daugherty* and *Tremayne* to apply the estoppel doctrine in order to preclude plaintiffs from asserting their constitutional claims, because those plaintiffs did not challenge any deficiencies with their notices of violation, "had clear options, were informed of those options, and could have raised their constitutional claims" in municipal court. *Edwards*, 426 S.W.3d at 655–57, 2013 WL 5913628, at *7–*8. Accordingly, this Court estopped the plaintiffs in *Edwards* from bringing their constitutional claims because they paid the fine and chose not to raise such claims in municipal court. *Id.* at 656–57, 2013 WL 5913628, at *8.

However, in *Kubley v. Brooks*, 141 S.W.3d 21 (Mo. banc 2004), the Missouri Supreme Court limited the purview of *Daugherty* (and, thereby, *Tremayne* ) by holding that subject matter jurisdiction cannot be conferred by estoppel "[e]xcept in *unusual circumstances.*" *Id.* at 28 (emphasis added). For example, such "unusual circumstances" exist so as to estop a litigant from contesting subject matter jurisdiction where the parties accept the benefits of a judgment of dissolution entered by a commissioner rather than a judge. *Id.* (citing *Daugherty*, 969 S.W.2d at 223–25).

■ Even after considering *Tremayne, Daugherty, Edwards* and Freeman on Judgments, this Court concludes they are not controlling in this case. First, we find no "unusual circumstances" so as to apply estoppel because we see no "benefits" flowing to Brunner by paying the $94.50 fine/penalty. *See, e.g., In re Marriage of Boston*, 104 S.W.3d 825, 831 n. 8 (Mo.App. S.D.2003) (finding husband was not estopped from challenging void decree because husband did not receive any benefits

of the decree) (citing *Wright v. Mullen,* 659 S.W.2d 261, 263 (Mo.App. W.D.1983) ("A void judgment can have no conclusive effect, either as res judicata or as an estoppel because the proceeding which culminates in the void judgment is itself without integrity.")). The only benefits received went to City—City collected $94.50. We see no justifiable reason in this case to expand the *Daugherty* holding beyond the very narrow limitations set forth in *Brooks, supra,* and the longstanding principle regarding the inability to waive subject matter jurisdiction. The general rule is subject matter jurisdiction cannot be conferred by estoppel. *Sodipo v. Univ. Copiers,* 23 S.W.3d 807, 809 (Mo. App. E.D.2000); *see also Oberreiter v. Fullbright Trucking Co.,* 117 S.W.3d 710, 716 (Mo.App. E.D.2003) ("Subject matter jurisdiction cannot be conferred by consent or estoppel...."); *Hightower v. Myers,* 304 S.W.3d 727, 733 (Mo. banc 2010) (subject matter jurisdiction can be raised by any party or court, even in a collateral proceeding). It is incumbent upon the parties to demonstrate the exception—"unusual circumstances"—to the general rule so as to estop the opposing party. Here, Respondents have not persuaded us that there are "unusual circumstances" so as to resort to the doctrine of estoppel.

Further, Freeman on Judgments does not call for applying estoppel in this situation: "[j]udgments by confession are in nowise exempt from the rule applicable to other judgments, that to be valid they must be entered in a court having jurisdiction over the subject matter of the action and the parties thereto." Freeman of Judgments § 1309 (5th ed.1925). In fact, contrary to Respondents' claim that equity should estop Appellants from asserting their constitutional claims, Freeman encourages a court's liberal exercise of its equitable jurisdiction for the opposite reason—equity should be employed over judgments entered by confession so that a defendant may "make a defense on the merits." *Id.* at § 1340.

◼ Considering the myriad of due process and other constitutional issues at stake in this case, public policy would be ill-served in estopping Brunner from raising such issues where Brunner's alleged violation of the Ordinance was not litigated on the merits. *See, e.g., State v. Wilson,* 5 S.W.3d 527, 529 (Mo.App. E.D.1999) (distinguishing *Daugherty* by noting that trial in a court without jurisdiction deprives a defendant of due process). As the doctrine of estoppel is one of equity, "it must be applied to do equity and must not be applied in such a manner as to violate principles of right and good conscience." *Rhodus v. Geatley,* 347 Mo. 397, 147 S.W.2d 631, 638 (1941) (citing *Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 323, 56 S.Ct. 466, 80 L.Ed. 688 (1936)); *see also* Restatement (Second) of Judgments § 12, cmt. a (1982) ("As long as the possibility exists of making error in a determination of the question of subject matter jurisdiction, the principles of finality and validity cannot be perfectly accommodated. Questions of subject matter jurisdiction must be justiciable if the legal rules governing competency are to be given effect; some tribunal must determine them, either the court in which the action is commenced or some other court of referral. If the question is decided erroneously, and a judgment is allowed to stand in the face of the fact that the court lacked subject matter jurisdiction, then the principle of validity is compromised."). Equity would not be served by estopping Brunner from bringing his constitutional claims, but equity will be served in permitting Brunner to now assert his constitutional claims.

We find that Brunner is not estopped from asserting his constitutional claims related to Counts I, III and IV of the Petition.

Therefore, all Appellants have standing, have not waived, and are not estopped from bringing their claims set forth in Counts I, III and IV of the Petition. Appellants' Point IV on appeal is, hereby, granted.

### Validity of the Ordinance

Appellants directly challenge the validity and/or the constitutionality of the Ordinance through three different avenues: (1) the Ordinance is invalid and unconstitutional because City lacked authority to enact the Ordinance; (2) the Ordinance is invalid because the Ordinance conflicts with state law; and (3) the Ordinance is invalid and unconstitutional because the Ordinance violates Appellants' constitutional rights of due process. As such, before delving into the details of the claims advanced by the litigants, we being our analysis with a review of key principles relating to municipal corporations and their powers.

■■■ Generally, ordinances are presumed to be "valid and lawful" and are construed in such a manner as to uphold its validity "unless the ordinance is *expressly inconsistent* or in irreconcilable conflict with the general law of the state." *McCollum v. Dir. of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995) (emphasis added). However, ordinances imposing penalties are "strictly construed" against the municipality and will not be extended by implication. *City of Kansas City v. Heather*, 273 S.W.3d 592, 595 (Mo.App. W.D.2009). There being a "fine (penalty)" imposed for violation of the Ordinance, we will strictly construe the Ordinance against the municipality. *See, e.g., City of St. Louis v. Brune Mgmt. Co.*, 391 S.W.2d 943, 946 (Mo.App. 1965) (because violation of housing ordinance was a misdemeanor and subjected violator to a fine, the ordinance was penal in nature and, therefore, strictly construed).

■■■ A municipal corporation, such as the City of Arnold, organized under the statutes of this state (specifically, third-class cities pursuant to Section 77.010), is a creature of the legislature. *Anderson v. City of Olivette*, 518 S.W.2d 34, 39 (Mo. 1975). Accordingly, like all creatures of this state, City's power to enact ordinances is derived from the state and must be exercised under that authority so given by the state. *City of Arnold v. Tourkakis*, 249 S.W.3d 202, 205 (Mo. banc 2008) ("A non-charter city, such as Arnold, derives its power from the legislature's enactment of laws."). "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and none others:" those powers expressly granted, those powers necessarily and fairly implied in or incidental to powers expressly granted, and those powers essential to the declared objects and purposes—"not simply convenient, but indispensable"—of the municipal corporation. *City of Richmond Heights v. Shackelford*, 446 S.W.2d 179, 180 (Mo.App.1969) (citations omitted). Courts will adhere to a "strict rule of construction" when determining the powers of a municipality and any reasonable doubt as to whether a power has been so delegated to a municipality will be resolved in favor of non-delegation. *Burks v. City of Licking*, 980 S.W.2d 109, 111 (Mo.App. S.D.1998); *City of Kirkwood*, 589 S.W.2d at 35–36.

■■■ An ordinance adopted and enacted by a municipal corporation must be consistent and in harmony with, and not in contravention of state law on the same subject. *Shackelford*, 446 S.W.2d at 180; *see also* Section 71.010 (a municipal corpora-

tion "shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject").

With these basic principles of municipal law in mind, we proceed to the arguments.

### A. Does City have authority to enact the Ordinance?

To begin, Appellants argue that Arnold lacked authority to enact the Ordinance for three reasons: (1) the Ordinance was not validly enacted pursuant to City's statutory grant of authority provided by Section 304.120 because the Ordinance is in conflict with state law, not in conformity with state law upon the same subject, and is not an "additional rule of the road;" (2) the Ordinance was not validly enacted pursuant to City's police power because the Ordinance has no "substantial and rational relationship to the health, safety, peace, comfort and general welfare" of its citizens and is therefore unconstitutional; and (3) the Ordinance was not validly enacted because it was enacted solely for generating revenue (Appellants' Point II).

### 1. The Ordinance was validly enacted pursuant to City's statutory grant of authority prescribed in Section 304.120.

First, Appellants contend the Ordinance was not validly enacted pursuant to a legitimate exercise of City's statutory authority.

Pursuant to Section 304.120, the legislature has granted municipalities, including City, the power to "[m]ake additional rules of the road or traffic regulations to meet their needs and traffic conditions" so long as the municipality enacts ordinances consistent with and not in conflict with state law. Section 304.120.2(1); Section 304.120.3; see also Smith, 409 S.W.3d at 425. Here, Appellants have pled that City has exceeded its statutory grant of authority under Section 304.120 by enacting the Ordinance, because the Ordinance is not an "additional" rule of the road or traffic regulation enacted to regulate new, supplemental or separate conduct.

We follow the reasoning set forth in Unverferth and Damon. In both of those cases, the courts found that the ordinances did qualify as an additional traffic regulation under Section 304.120 although the ordinances addressed conduct already regulated under another provision of law. Unverferth, 419 S.W.3d at 94; Damon, 419 S.W.3d at 183 ("An ordinance delineating an enforcement mechanism falls within the statute's purview of meeting a municipality's 'needs and traffic conditions.' ").

We recognize that the use of technology as a means of police enforcement will inevitably continue to increase. As demonstrated by the Missouri Court of Appeals' series of cases relating to red light cameras, we are uncertain as to whether the birth of automated traffic enforcement was envisioned by our Missouri Legislature. Compared with other technological advancements utilized by police (e.g., radar guns), the use of automated traffic enforcement systems do not result in an immediate interaction with a human police officer. Cf. Smith, 409 S.W.3d at 427 (questioning whether automated red light enforcement systems "fundamentally" differ from radar guns). We are bound by the plain language of the statute as written and have a duty to construe and apply the laws as written and any argument as to the alleged unfairness of construction or lack of statutory guidance should be addressed to the legislative and executive branches of government. Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. banc 2011) ("If the intent of the legislature is clear and unambiguous, by giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction

in interpreting the statute.") (citations omitted); *see also Kavanagh v. Dyer O'Hare Hauling Co.*, 189 S.W.2d 157, 160 (Mo.App.1945). Accordingly, the plain language of Section 304.120 permits municipalities to enact additional rules of the road and traffic regulations and the Ordinance is an additional rule of the road or regulation enacted to meet City's needs and traffic conditions.

Therefore, the Ordinance was a valid exercise of City's statutory grant of authority.

***2. Further judicial proceedings are required to determine if the Ordinance was validly enacted pursuant to City's exercise of its police power.***

■ Next, Appellants argue that even if the Ordinance was appropriately enacted pursuant to Section 304.120, the Ordinance was in violation of City's "police power," in that the Ordinance has no "substantial and rational relationship to the health, safety, peace, comfort and general welfare" of its citizens. Specifically, Appellants allege that the Ordinance circumvents Section 302.225, governing the assessment and reporting of points on drivers' licenses for moving violations,[17] the purpose of which is to increase public safety on roads, and that the red light cameras do not increase safety, but rather cause increased risks. *Unverferth,* 419 S.W.3d at 95.

■ "Police power is the power inherent in government to enact laws, within constitutional limits, to promote order, safety, health, morals, and general welfare of society." *Engelage v. City of Warrenton,* 378 S.W.3d 410, 414 (Mo.App. E.D. 2012) (citations and quotation marks omitted). However, in Missouri, it is a well-settled principle of local government law that a city has no inherent police power,

but, rather, a municipal corporation's authority to exercise certain police powers must originate from a specific delegation by the state. *City of Lake Lotawana v. Meagher,* 581 S.W.2d 105, 106 (Mo.App. W.D.1979) (quoting *Tietjens v. City of St. Louis,* 359 Mo. 439, 222 S.W.2d 70, 73 (1949)); *see also Lewis v. City of Univ. City,* 145 S.W.3d 25, 32 (Mo.App. E.D. 2004) ("Missouri law requires a city's authority to exercise police power to derive from a specific delegation by the state or from the express or fairly implied grant of powers of a city's charter."). Here, the specific statutory delegation of police powers to municipalities of the third-class, such as City, is found in Sections 77.260 and 77.590. *See* Section 77.260 (City, via the municipality's mayor and council, has been afforded the power to "enact and ordain any and all ordinances not repugnant to the constitution and laws of this state, and such as they shall deem expedient and for the good government of the city, the preservation of peace and good order, . . . and the health of the inhabitants thereof. . . ."); *see also* Section 77.590. The legislature has delegated statutory grants of authority permitting Arnold to exercise general police powers and pass ordinances for the health and safety of its citizens. *Miller v. City of Town & Country,* 62 S.W.3d 431, 437 (Mo.App. E.D.2001).

■ Despite a municipality's authority to enact ordinances pursuant to its broad police power, "the police power is not unlimited and cannot lessen constitutional protections." *Damon,* 419 S.W.3d at 184 (citing *City of Kansas City v. Jordan,* 174 S.W.3d 25, 40 (Mo.App. W.D.2005)). A municipal ordinance will be considered a legitimate exercise of police power "if the expressed requirements of the ordinance bear a *substantial and rational relation-*

17. Discussed further, *infra.*

*ship* to the health, safety, peace, comfort, and general welfare of its citizenry." *Lewis,* 145 S.W.3d at 32 (emphasis added). Accordingly, "reasonableness" is the ultimate test in determining the validity of an ordinance enacted pursuant to a municipality's police power. *Miller,* 62 S.W.3d at 437. We will presume an ordinance enacted pursuant to a municipality's police power is valid, and if "reasonable minds might differ as to whether a particular ordinance has a substantial relationship to the protection of the general health, safety, or welfare of the public, then the issue must be decided in favor of the ordinance." *Bezayiff v. City of St. Louis,* 963 S.W.2d 225, 229 (Mo.App. E.D.1997). The party challenging the ordinance bears the burden of showing the ordinance's unreasonableness and the challenger must "negate every conceivable basis which might support it." *Id.; see also Lewis,* 145 S.W.3d at 32.

Recently, this Court held that reducing the dangerousness of intersections by targeting vehicles that violate existing traffic regulations is rationally and substantially related to health, safety, peace, comfort, and general welfare of the public, and is a valid exercise of a municipality's police power. *Smith,* 409 S.W.3d at 425–26. In relying upon this proposition espoused in *Smith, Unverferth* held that the plain language of a red light camera ordinance which targeted vehicles violating existing traffic regulations (i.e., vehicles running red lights) was "on its face … rationally related to public safety." *Unverferth,* 419 S.W.3d at 95.

Like *Unverferth,* Arnold's Ordinance also targets those vehicles running a red light. *See* Arnold Code § 23–182 (the Ordinance authorizes the installation and operation of an automated red light enforcement system in Arnold "for the purpose of enforcing traffic control signal regulations as provided in section 23–173."). However-

er, unlike *Unverferth,* here, Appellants posited numerous facts in their Petition which call into question whether the Ordinance was reasonable because the Ordinance does not *actually* promote public safety. For example, Appellants aver, *inter alia,* the following reasons the Ordinance does not reasonably promote public safety:

- Arnold circumvents Missouri state law intended to keep dangerous drivers off the road (Sections 302.225 and 302.302) by classifying red light violations as "non-moving" and ignoring the assessment of points. "[I]f the goal of red light cameras is to enforce public safety, then drivers should be assessed points on their driver's license just like other moving violations and just like they would if pulled over by a police officer for running a red light." Under Arnold's scheme, a driver could run 100 red lights and, yet, remain on the road, left to endanger·other drivers because no points are assessed. This is antithetical to state law.

- Jefferson County, the county in which Arnold sits, prohibits the use of red light camera enforcement systems within the boundaries of Unincorporated Jefferson County because there exists no "sufficient statistical evidence that automated photo traffic enforcement systems are more effective in creating safer roads than engineering solutions[.]" Jefferson County Bill No. 11–0317, Jefferson County Code § 105.130.

- Appellants reference numerous "comprehensive studies," and scholarly journals which "conclude cameras actually increase crashes and injuries." Further, Appellants rely upon City's own data that accidents increased at certain intersections in City after the installation of red light cameras.

• ATS had knowledge of the unreasonableness of the Ordinance. ATS was provided a memorandum by Missouri legal counsel with analysis on the constitutionality and validity of red light camera enforcement systems. In said memorandum, Missouri legal counsel concluded: it does "not believe" municipalities possess the authority to adopt an ordinance that would permit the municipality to circumvent the Missouri Director of Revenue's point system.

Moreover, Appellants contend that the Ordinance was unreasonable because there exist numerous other methods—as proven by studies—City had available to decrease red light violations, promote the general welfare of citizens, and increase safety. Such methods include the use of roundabouts and the timing of lights. All of these are factors in determining the reasonableness of the Ordinance. *See President Riverboat Casino–Mo., Inc. v. Mo. Gaming Comm'n,* 13 S.W.3d 635, 641 (Mo. banc 2000) ("The police power is limited by: (1) the rights guaranteed by the Constitution, (2) the necessity of a legitimate public purpose, and (3) a reasonable exercise of the power.").

Additionally, we believe there are questions regarding whether Arnold contracted or surrendered its governmental functions (i.e., prosecuting violations of municipal ordinances). *Joseph v. Marriott Intern., Inc.,* 967 S.W.2d 624, 627 (Mo.App. W.D. 1998) ("A city cannot surrender or contract away its governmental functions."). While the City Police Department and City Prosecutor, at first, determine whether a violation has occurred, the Notice of Violation explicitly directs the recipient to mail his or her Affidavit transferring liability to ATS in Arizona. This gives the impression that ATS, a non-governmental entity and for-profit company, has the power to determine whether the prosecution should proceed. Violators are also permitted to remit the fine to ATS via ATS's website. On remand, discovery shall be permitted on this topic.

Because we do not weigh or determine the credibility or persuasiveness of the factual allegations on appeal from a motion to dismiss, but rather, "we accept all properly pleaded facts as true, giving the pleadings their broadest intendment and we construe the allegations favorably to the pleader[,]" *Chochorowski,* 295 S.W.3d at 197, we find Appellants' allegations are sufficient to survive Respondents' motions to dismiss. *See, e.g., Damon,* 419 S.W.3d at 185; *cf. Unverferth,* 419 S.W.3d at 103. This opinion should not be read as holding that a municipality cannot exercise its police power to enact red light camera enforcement systems, but, only that, here, Appellants' averments require further judicial proceedings as to whether the Ordinance was reasonably in accordance with City's police powers. *See, e.g., Glenn v. City of Grant City,* 69 S.W.3d 126 (Mo. App. W.D.2002).

We remand to the trial court to determine whether the Ordinance was validly enacted pursuant to City's police power, and instruct the trial court to permit discovery on this issue.

**3. *Further judicial proceedings are required to determine whether the Ordinance is invalid because it was enacted solely for revenue generation.***

██ Appellants further contend that the purpose of the ordinance was not for the general welfare of the people, but enacted for the sole purpose of generating revenue.

In *Automobile Club of Missouri v. City of St. Louis,* 334 S.W.2d 355 (Mo.1960), the Missouri Supreme Court noted that an ordinance enacted pursuant to a municipal-

ity's police power may not be a tax ordinance "in the guise of an ordinance enacted under the police power." *Id.* at 363. The courts have the duty to determine "whether the primary and fundamental purpose of the ordinance is regulation under the police power or revenue under the tax power." *Id.* In so determining, a court should not only consider such factors as the amount of revenue and the primary purpose of the ordinance, but should also consider "other relevant facts that bear on the question of the basic nature of the ordinance." *Id.*

The courts in *Unverferth, Ballard, Edwards*, and *Damon* held that the plaintiffs had raised allegations sufficient to survive a motion to dismiss, relating to whether the municipalities or cities had enacted their red light camera ordinances for the overriding purpose of generating revenue, and not to promote traffic safety. *Unverferth,* 419 S.W.3d at 103; *Ballard,* 419 S.W.3d at 122–23; *Edwards,* 426 S.W.3d at 660–62, 2013 WL 5913628, at *12–*13; *Damon,* 419 S.W.3d at 185.

Likewise, there are sufficient allegations that City enacted the Ordinance for revenue-generating purposes, not the promotion of traffic safety. As did the couple in Aesop's Fable, Arnold seems to have killed the "elusive goose that lays the golden egg[,]" *Smith,* 409 S.W.3d at 427, for the primary and fundamental purpose of the Ordinance seems to be just that—profit. Profit for Arnold and profit for ATS. *See, e.g., City of Davenport v. Seymour,* 755 N.W.2d 533, 548 (Iowa 2008) (Wiggins, J., dissenting) ("The legislature never envisioned that municipalities could raise revenue under the guise of traffic law enforcement at the expense of safer highways."). There are multiple allegations that question if the Ordinance's overriding purpose was for the generation of revenue:

- The Ordinance could not have been enacted for traffic safety as the Ordinance does not assess points against the driver's license for violation of the Ordinance, thereby authorizing unsafe drivers to remain behind the wheels of vehicles. This is paradoxical to safety. Why would a municipality enact an ordinance permitting a driver to run 100 red lights and, yet, remain on the road, left to endanger other drivers?
- The Ordinance could not have been enacted for traffic safety as the Ordinance creates a rebuttable presumption that the *owner* of the vehicle, not the *actual driver* of the vehicle, was the culprit, thereby, again, authorizing unsafe drivers to remain behind the wheels of vehicles. Why would a municipality wish to punish an individual who was not guilty of any offense (unless a municipality believes it is now an offense to permit another—a spouse, a child, a friend, etc.—to drive another's vehicle)?
- The Ordinance could not have been enacted for traffic safety as the Ordinance prohibits photographing the driver of the vehicle, thereby subjecting the *owner,* not the *actual driver* of the vehicle, to prosecution. Why would a municipality elect to enact an ordinance that did not assist the municipality in prosecuting the *actual* culprit?
- The Ordinance could not have been enacted for traffic safety as the Ordinance permits the alleged-violator to remain driving, and causing potentially more danger to other drivers, instead of a human police officer conducting a stop to determine if the driver is a present danger (i.e., impaired drivers, drivers without a license or a revoked license). Why would a municipality enact an ordinance that decreased the

municipality's capability of ensuring safe roads?

- The Ordinance was enacted for generating revenue as the Ordinance generates significantly more revenue than is necessary to offset the costs of enforcing the Ordinance as demonstrated by ATS's receipt of 33 percent of each Ordinance violation. Why would a municipality enact an ordinance that levied a fine/penalty sufficient so that the municipality could permit a non-governmental, profit-making company to siphon off a third of the revenue generated?

- The Ordinance was enacted for generating revenue as the Ordinance authorizes Arnold to prosecute the *owner* of the vehicle, not the *actual driver* of the vehicle, thereby decreasing the municipal resources expended by City and increasing their revenue. Why would a municipality enact an ordinance that permitted the prosecution of innocent individuals, while increasing the funds collected?

The answer to each of these allegations would seem to favor generation of revenue as the primary purpose of the Ordinance. When the primary and fundamental purpose of an ordinance is revenue-generation, such ordinance cannot stand.

In the absence of the Legislature[18] adopting a statute regulating the use of traffic enforcement cameras, the efforts to tap new sources of municipal revenue will continue. *Salomon v. Jersey City*, 12 N.J. 379, 97 A.2d 405, 413 (1953) ("Economic conditions and any urgent need for relief to municipalities must receive recognition, but ought come in the form of fair and forth-right legislation, framed so that where aid is granted to municipalities it

may be accompanied by suitable limitations and safeguards in the interests of the State and all of its people."). Such ordinances must actually be enacted for the general welfare of citizens or the Legislature must alter the rules.

Like the preceding cases, we remand to the trial court for a determination regarding the purpose of the enactment of the Ordinance, and instruct the trial court to permit discovery on this issue.

As to Appellants' Point II, we reverse and remand the trial court's judgment and instruct the trial court to permit discovery regarding whether the Ordinance was validly enacted pursuant to City's police power and whether generating revenue was the overriding purpose behind the enactment of the Ordinance.

### B. Does the Ordinance Conflict with State Law?

Second, Appellants contend that the Ordinance is invalid because the Ordinance directly conflicts and is contrary to state law in two ways: (1) the Ordinance conflicts with Section 304.281, a Missouri statute governing traffic signal violations; and (2) the Ordinance conflicts with Sections 302.225, a Missouri statute governing the assessment of points on drivers' licenses for moving violations (Appellants' Point I).

 In Missouri, because "[a] municipality derives its governmental powers from the state and exercises generally only such governmental functions as are expressly or impliedly granted it by the state[,]" *Century 21–Mabel O. Pettus, Inc. v. City of Jennings*, 700 S.W.2d 809, 811 (Mo. banc 1985), "[a] municipal ordinance must be in harmony with the general laws of the state and is void if in conflict." *City*

---

18. *See* Joel O. Christensen, *Wrong on Red: The Constitutional Case Against Red–Light Cameras*, 32 Wash. U. J.L. & Pol'y 443, 460–

61 (2010) (chronicling the Missouri Legislature's avoidance of red light camera ordinances).

*of Manchester*, 834 S.W.2d at 907; *see also* Section 77.590 (powers and limitations of the councils in third class cities); Section 71.010 (ordinances shall be in "conformity with the state law upon the same subject"). A municipal ordinance is considered to contravene state law if "the ordinance permits that which the [state] statute forbids and prohibits, and vice-versa." *Morrow v. City of Kansas City*, 788 S.W.2d 278, 281 (Mo. banc 1990) (citations omitted); *see also* Section 304.120.3 ("No ordinance shall be valid which contains provisions contrary to or in conflict with [the state's traffic laws]"). "The ordinance may supplement a state law, but when the expressed or implied provisions of each are inconsistent and in irreconcilable conflict, then the statute annuls the ordinance." *City of Manchester*, 834 S.W.2d at 907.

**1. The Ordinance does not conflict with Section 304.281.[19]**

■ Appellants first argue that the Ordinance conflicts with or is contrary to Section 304.281, the state statute governing traffic signal violations. Specifically, Appellants allege that Section 304.281 only applies to "drivers of vehicles and pedestrians," not owners of the vehicles. We disagree.

*Unverferth* is directly on point. *See Unverferth*, 419 S.W.3d at 98–99. In *Unverferth*, the red light camera ordinance prescribed a violation of said ordinance "when such person fails to comply with the rules and regulations when a steady red signal appears at an intersection and the violation is detected though the automated red light enforcement system . . . ." *Id.* at 84. The *Unverferth* plaintiffs offered an identical argument as the plaintiffs in the case in bar to substantiate an alleged conflict with Section 304.281—Section 304.281 only applies to drivers of vehicles and pedestrians, not owners of the vehicles. *Id.* at 98–99. This court determined that the *Unverferth* plaintiffs' argument failed "because like the state statute, the Ordinance makes it unlawful for drivers, not owners, to run a red light[,]" in that the ordinance allowed for the owner to produce evidence that he or she was not driving the vehicle at the time of the violation either by affidavit or under oath at a municipal court proceeding. *Id.*

Similarly, the Arnold Ordinance prohibits a vehicle from entering an intersection when a steady red signal appears at the intersection. Arnold Code § 23–182, with reference to § 23–173. Furthermore, the Ordinance allows the owner of the vehicle to proffer evidence that he or she was not driving the vehicle at the time of the violation by affidavit, on a form provided by Arnold, or under oath at municipal court proceedings. Arnold Code § 23–186(a)(8). Included in the Notices of Violation mailed to Appellants was a form furnished by City informing Appellants of these procedures. Clearly, the Ordinance regulates the same conduct prescribed in Section 304.281, but the Ordinance is valid and enforceable because the Ordinance's provisions do not conflict with state law. *See, e.g., Unverferth*, 419 S.W.3d at 98–99; *Cf. Edwards*, 426 S.W.3d at 662–64, 2013 WL 5913628, at *15–*16 (ordinance conflicts with Section 304.281 because ordinance imposes the rules regarding traffic signals on *owners*,

**19.** Appellants combine, what we perceive as, two different arguments: (1) the Ordinance conflicts with Section 304.281 in that the Ordinance permits what Section 304.281 prohibits, i.e., prosecution of a vehicle *owner* for an Ordinance violation; and (2) the Ordinance conflicts with Section 304.281 in that the Ordinance prescribes fewer elements for an Ordinance violation by eliminating the burden of proving the identity of the driver by prosecuting vehicle owners (i.e., the Ordinance establishes a rebuttable presumption). The latter is more aptly discussed, *infra*, under due process violations.

making them strictly liable for running a red light regardless of who was driving the vehicle).

Therefore, like *Unverferth*, we find that Ordinance does not conflict with Section 304.281.

### 2. The Ordinance does conflict with Section 302.225.

 Next, Appellants contend that the Ordinance directly conflicts with state statutes governing the reporting requirements and assessment of points for moving violations. Appellants argue that any violation of the Ordinance constitutes a moving violation as defined by state statute, yet Arnold has ostensibly (without explicitly acknowledging) classified violations of the Ordinance as non-moving infractions in that points are expressly prohibited from being assessed against the violator. Arnold Code § 23–187 ("Except that no points will be assigned to the violators [sic] drivers license when guilty of an automated red light enforcement violation."). We agree with Appellants that the Ordinance conflicts with state law.

Section 302.225 requires that courts report any moving violation offenses to the Department of Revenue within seven days of any plea or finding of guilty. *See* Section 302.225.1. Section 302.010(13) plainly defines a "moving violation" as the "character of traffic violation where at the time of violation the motor vehicle involved is in motion[.]" Section 302.302.1(1) requires the Department of Revenue to assess two points against the driver's license of any person convicted of a moving violation. *Edwards*, 426 S.W.3d at 663–64, 2013 WL 5913628, at *16. Thus, "the plain language of Missouri state law requires any municipal ordinance violation occurring while the vehicle is in motion be assessed two points by the director of revenue." *Unverferth*, 419 S.W.3d at 97.

Here, the Ordinance makes no explicit statement to characterize the conduct as a non-moving violation, but, indeed, that is Arnold's intention. The Ordinance explicitly states that no points will be assessed against the violator's license. Arnold Code § 23–187. However, under the plain language of the Ordinance, a person commits an Ordinance violation when he or she violates Section 23–173 of the Arnold Code, which prohibits a vehicle facing a steady red light from entering an intersection. *See* Arnold Code §§ 23–182, 23–184(a), and 23–173.

As in *Unverferth, Edwards*, and *Damon*, "the conduct regulated by the Ordinance is, quite simply and unambiguously, running a red light[,]" as "[c]ommon sense and collective experience suggest that a person cannot fail to stop at a red light without being in motion." *Unverferth*, 419 S.W.3d at 98; *Edwards*, 426 S.W.3d at 664, 2013 WL 5913628, at *17; *Damon*, 419 S.W.3d at 187; *see also City of Springfield v. Belt*, 307 S.W.3d 649, 652 (Mo. banc 2010) ("a violation of a red light ordinance, which typically is considered a moving violation"). In so doing, Arnold "permits what the state law prohibits—the classification of running a red light as a non-moving violation free from the assessment of points." *Unverferth*, 419 S.W.3d at 98; *Edwards*, 426 S.W.3d at 664, 2013 WL 5913628, at *17 (determining that an ordinance conflicts with statutes related to assessment of points where red-light ordinance "fail[ed] to require the municipal court to report a violation of the Ordinance as a moving violation to the director of revenue for the assessment of points"); *Damon*, 419 S.W.3d at 187. When is running a red light not the same as running a red light? Arnold believes it is when the violation is captured by a red light camera. Arnold is incorrect.

Therefore, as a matter of law, the Ordinance unequivocally conflicts with the state statute and is therefore void and unenforceable. Appellants' Point I is granted.

### C. Does the Ordinance violate Appellants' Constitutional Due Process?

Third, Appellants argue that the Ordinance is unconstitutional and invalid because it deprives Appellants of their due process rights as provided by the Missouri Constitution. Specifically, Appellants allege that the Ordinance's rebuttable presumption violates their rights to due process, pursuant to Article I, Section 10 of the Missouri Constitution, because the rebuttable presumption is unconstitutional and in violation with state law in that it expands the liability for red light violators to the vehicle owners who were not driving at the time of violation (component of Appellants' Point II) and, additionally, deprives Appellants of their right to be heard in a meaningful way in that the Ordinance impermissibly shifts the burden of proof onto the accused (Appellants' Point III).

To combat Appellants' averments, Respondents argue that the rebuttable presumption does not expand the liability for red light violations because the use of rebuttable presumptions is clearly permitted under Missouri case law as established by *City of St. Louis v. Cook*, 359 Mo. 270, 221 S.W.2d 468 (1949). Further, Respondents argue that the rebuttable presumption does not impermissibly shift the burden of proof onto the accused because rebuttable presumptions shift the burden of *evidence*, not the burden of *proof*.

Initially, because the crux of Appellants' arguments is contingent upon the validity and constitutionality of the rebuttable presumption, we set forth the rebuttable presumption prescribed by the Ordinance:

(a) If the city proves:

(1) That a motor vehicle was being operated or used;

(2) That the operation or use of the motor vehicle was in violation of section 23–173; and

(3) That the defendant is the owner of the motor vehicle, then:

(b) A rebuttable presumption exists that the owner of the motor vehicle operated or used in violation of this division was the driver of the vehicle at the time and place the violation was captured by a recording image.

Arnold Code § 23–183.

To properly dispose of this issue, we are called upon to determine if rebuttable presumptions are valid and whether the Ordinance is criminal in nature.

### 1. A rebuttable presumption is invalid and unconstitutional if an ordinance is criminal in nature.

Clearly, the Ordinance "explicitly presume[s] that the ownership of the vehicle is conflatable with driving the vehicle at a given time." *Wrong on Red: The Constitutional Case Against Red–Light Cameras*, 32 Wash. U.J.L. & Pol'y at 463. While "rebuttable in name, this presumption is conclusive in practice." *Id.; see also Unverferth*, 419 S.W.3d at 109 (Mooney, J., dissenting in part) ("Given the context in which it operates, Florissant did all in its power to render the rebuttable presumption conclusive."); *Kellogg v. Murphy*, 349 Mo. 1165, 164 S.W.2d 285, 294 (1942) ("It is conceded everywhere that a presumption of fact cannot be made conclusive except by entering the field of substantive law."). However, Respondents contend that rebuttable presumptions are permissible under Missouri precedent.

In *City of St. Louis v. Cook*, 359 Mo. 270, 221 S.W.2d 468 (1949), a defendant was prosecuted under a city ordinance establishing it to be an offense to park a

vehicle on any public street in any prohibited zone. *Id.* at 468. The city ordinance, further, established it to be "prima facie evidence" that the owner of the illegally parked vehicle was also the violator of the city ordinance. *Id.* At trial the city presented evidence establishing that a vehicle had been illegally parked and the defendant was the owner of said vehicle. *Id.* at 469. On appeal to a division of the Missouri Supreme Court, the defendant contended that the city ordinance violated Article I, Section 10 of the Missouri Constitution (due process protections), that the city ordinance compelled the defendant to testify against himself in a criminal matter, and that the city ordinance violated the fundamental rule that a defendant is presumed innocent. *Id.* The Missouri Supreme Court overruled the defendant's arguments and held that the ordinance did not violate the defendant's constitutional rights. *Id.* at 469–70. Specifically, the Missouri Supreme Court stated that the ordinance's rebuttable presumption operated as a valid evidentiary tool that a shown fact may support an inference of the ultimate fact proved. *Id.* at 469. Thus, the rebuttable presumption did not alter the burden of proof, but merely shifted the burden of evidence onto the defendant to rebut the city's prima facie case. *Id.*

While calling into question the need for such a presumption in light of technological advancements, *Unverferth,* in relying upon *Cook,* held that "such a presumption has long been established in Missouri[,]" and that courts could not disregard Missouri Supreme Court precedent. *Unverferth,* 419 S.W.3d at 99–100.

Conversely, *Damon* distinguished *Cook* on the basis that *Cook*'s holding "was dependent on the rationale that the presumption must have some 'relation to or natural connection with the fact to be inferred.'"

*Damon,* 419 S.W.3d at 189 (quoting *Cook,* 221 S.W.2d at 470). Accordingly, *Damon* limited the standard applied in *Cook* to only those cases where the ordinance (and the proceedings springing therefrom) is civil. *Damon,* 419 S.W.3d at 191. Thus, ordinances which are quasi-criminal require the trial court to examine if there is a rational connection between the facts proved and the ultimate fact presumed, whereas the rebuttable presumption is invalid when an ordinance is determined to be criminal in nature. *Id.*

We agree with and adopt *Damon*'s interpretation of *Cook* and elect not to extend *Cook* beyond the prosecution of parking violations. *Unverferth,* 419 S.W.3d at 108–09 (Mooney, J., dissenting in part). An ordinance that is criminal in nature cannot create a rebuttable presumption as this would infringe upon a fundamental canon and procedure of this country's and this state's criminal justice system: an accused is deemed innocent until proven guilty. *See State v. Neal,* 526 S.W.2d 898, 902 (Mo.App.1975) ("There is no question that the accused in a criminal proceeding is presumed innocent until proven guilty."); *see, e.g., Damon,* 419 S.W.3d at 189–91; *State v. Kuhlman,* 729 N.W.2d 577, 583–84 (Minn.2007).

### 2. *The Ordinance is criminal in nature.*

 Under Missouri law, municipal ordinance violations are considered civil actions, while prosecutions of municipal ordinances are "quasi-criminal in nature" because the rules of criminal procedure apply. *City of Webster Groves v. Erickson,* 789 S.W.2d 824, 826 (Mo.App. E.D.1990); *see also City of Stanberry v. O'Neal,* 166 Mo.App. 709, 150 S.W. 1104, 1105 (1912) ("Thus it has been ruled, time and again, by the Supreme Court, that such cases are quasi criminal, which is no less than saying that they are like criminal cases in many

respects."). Thus, constitutional protections afforded to an alleged-municipal-ordinance-violator are dependent upon the classification of the ordinance as either civil, criminal or quasi-criminal. *Damon,* 419 S.W.3d at 188 ("A determination that the ordinance is criminal and not civil would require heightened procedural protections required by the Fifth, Sixth, and Eighth Amendments to the U.S. Constitution and their accompanying provisions in the Missouri Constitution.") (analysis of the constitutional claims at issue depended upon whether the red light camera ordinance was criminal or civil in nature).

It is indisputable that Arnold must prove beyond a reasonable doubt that the owner of the vehicle was driving at the time of the offense. *Damon,* 419 S.W.3d at 188 (citing *City of Kansas City v. McGary,* 218 S.W.3d 449, 452 (Mo.App. W.D.2006)); *see also City of Ash Grove v. Christian,* 949 S.W.2d 259, 261 (Mo.App. S.D.1997). The constitutionality and validity of the rebuttable presumption prescribed by the Ordinance hinges upon whether the Ordinance is civil or criminal nature because "[a] presumption is analyzed differently depending on whether the context is criminal or civil." *Damon,* 419 S.W.3d at 188 (citing *Ulster Cnty. Court v. Allen,* 442 U.S. 140, 142, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)) (detailing the difference between a rebuttable presumption in a civil context versus a criminal context).

Previously, this Court outlined several factors to consider for determining whether an automated traffic ordinance is civil in nature:

(1) the ordinance includes express language indicating a municipality's intention to consider a violation of the ordinance to be civil in nature;

(2) the ordinance imposes a sanction that does not involve an affirmative disability or restraint on the individual but merely imposes a fine without assessing points against an individual's driver's license;

(3) the civil, non-point penalty for violating the ordinance is assessed without regard to the individual's knowledge or state of mind at the time of the violation;

(4) the presence of the deterrent purpose of the sanction may serve civil as well as punitive goals;

(5) the behavior to which the sanction applies is not already a crime;

(6) the ordinance is rationally connected to the broader, legitimate non-punitive purpose of promoting public safety; and

(7) the sanction imposed by the ordinance does not appear excessive in relation to the ordinance's purpose of promoting public safety.

*City of Creve Coeur v. Nottebrok,* 356 S.W.3d 252, 257–58 (Mo.App. E.D.2011); *see also Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). These factors do not uniformly weigh in favor of finding an ordinance is criminal or civil in nature, but the balance of factors weigh in favor of finding a civil or criminal nature.

*Damon,* an analogous case from the Missouri Court of Appeals, Western District, recognized these factors but found that the determination of whether a red light camera ordinance was civil or criminal in nature was not appropriate for review on appeal from a motion to dismiss. *Damon,* 419 S.W.3d at 188–91. As such, the court avoided analyses of the factors, and remanded the case to the trial court for a determination as to whether the red light camera ordinance was civil or criminal in nature. *Id.* at 188–91.

We find no further evidence is necessary to determine whether the Ordinance is civil or criminal in nature because, as a matter of law, through a plain reading of

the Ordinance and application of the afore-mentioned factors, it is evident that the Ordinance is criminal in nature. Arnold's enforcement mechanism is a system for imposing a penalty, possibly imprisonment, for the violation of a *criminal* ordinance. *See Damon,* 419 S.W.3d at 189 ("In so holding, we reject [city's] blanket argument that the rebuttable presumption merely shifts the burden of evidence, not the burden of proof").

In the instant case, it can hardly be said that the ordinance was civil in nature. The Ordinance does not include any language indicating the legislative body's preference for a civil label. In fact, we find no language even by reference as to Arnold's intent to use civil enforcement of the Ordinance. However, there is significant evidence indicating the criminal nature of the Ordinance. The Ordinance's Notice of Violation indicates that payment is "admission of guilt or liability" and includes the threat of a warrant for failure to dispose of the matter. *Hudson v. U.S.,* 522 U.S. 93, 104, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (an affirmative disability or restraint is one approaching the "infamous punishment of imprisonment"). Regardless of the capability of Arnold to legally arrest non-payers, the threat of imprisonment is sufficient to conclude that Arnold believed or intended the Ordinance to be criminal, in that Arnold imposes an affirmative disability or restraint on violators. While we agree that the intent of the Ordinance was not to punish violators via imprisonment, Arnold has acted as if the Ordinance was criminal in nature, presumably to coerce violators into paying the fine. Arnold may not use the Ordinance as a weapon and then ask to be shielded by the Ordinance. Moreover, because of the threat of imprisonment, the Ordinance imposes an additional penalty.

These factors tip the scale in favor of a finding that the Ordinance is, indeed, criminal in nature. Because we find the Ordinance criminal in nature, we hold that the Ordinance is unconstitutional insomuch as it creates a rebuttable presumption. *Damon,* 419 S.W.3d at 187–91. Finding the Ordinance unconstitutional because of the criminal nature of the Ordinance and the Ordinance's rebuttable presumption, the Ordinance, thereby, violates the rights afforded by Appellants' Article I, Section 10 of the Missouri Constitution, which prohibits the deprivation of life, liberty, or property without due process.

We grant Appellants' Point III.

### Unjust Enrichment

Finally, in Appellants' Point V on appeal, Brunner argues that the trial court erred in dismissing his claims for unjust enrichment against both City (Count II of the Petition) and ATS (Count VI of the Petition) because he properly pled the elements to support that cause of action, Respondents have no immunity, and Appellants' claims are not barred by the voluntary payment doctrine. We affirm in part, and reverse and remand in part.

"An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which the retention of the benefit, without paying its reasonable value, would be unjust." *S & J, Inc. v. McLoud & Co. LLC.,* 108 S.W.3d 765, 768 (Mo.App. S.D.2003). To properly and sufficiently establish a claim for unjust enrichment, the plaintiff must prove three elements: (1) the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit. *Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo.App. W.D.2010).

Respondents argue that the affirmative defense of the voluntary payment doctrine bars Brunner from bringing his claims for unjust enrichment. "The doctrine provides that a person who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover it back, though the payment is made without sufficient consideration, and under protest." *Sch. Dist. of Kansas City, Mo. v. Mo. Bd. of Fund Comm'r*, 384 S.W.3d 238, 274 (Mo. App. W.D.2012) (citations and internal quotation marks omitted).

 Appellants contend the voluntary payment doctrine should not apply because the Ordinance was void and unconstitutional, and, thus, Brunner paid the fine/penalty under a "mistake of fact." However, as has already been determined, Appellants' mistake was one of law, and a "mistake of law" is no defense to the voluntary payment doctrine. *See, e.g., Ballard*, 419 S.W.3d at 123, 2013 WL 5458971, at *12; *Unverferth*, 419 S.W.3d at 106–07.

We believe this argument deserves more analysis. Among other things, Appellants cite to an appellate court decision from Illinois for the proposition that an individual who paid a fine deriving from a void ordinance should be permitted to recover that fine:

> It is highly fictitious to say that one charged with violating a speeding ordinance should later be precluded from recovering fine money paid under the void ordinance simply because he voluntarily paid it. The reasoning merely assumes the conclusion. It has never been explained why money taken under a "mistake of law" should be kept by a governmental entity that wrongly demanded it. Equitable considerations require restitution of money illegally obtained.
>
> \* \* \*

To follow the city's arguments that the fines should remain untouched would be equivalent to declaring that an ordinance, which has been declared unconstitutional, was at one time constitutional. However, unconstitutional statutes are void and of no effect.

*Johnston v. City of Bloomington*, 61 Ill. App.3d 209, 18 Ill.Dec. 538, 377 N.E.2d 1174, 1177–78 (1978) (reversed on other grounds without reaching this point).

The Appellate Court of Illinois delivered a persuasive and extremely rational articulation as to the quagmire created by permitting restitution for a "mistake of fact" but not for a "mistake of law." However, under current law in Missouri, a "mistake of law" is no defense to the voluntary payment doctrine and even the Illinois court found that payment under an ordinance later declared void is still a "mistake of law."

As addressed in the five prior red light camera cases (all addressing unjust enrichment claims), we too confront the issue regarding the sufficiency of "duress" necessary to preclude the use of the voluntary payment doctrine. *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 726 (Mo. banc 2009) ("Unless there is fraud or duress, the voluntary payment doctrine prohibits a person who voluntarily pays money with full knowledge of the facts from recovering money."). In the four cases emerging from this Court, the plaintiffs' claims for unjust enrichment were denied because the voluntary payment doctrine applied and the plaintiffs were not under duress. *Smith*, 409 S.W.3d at 418–21; *Unverferth*, 419 S.W.3d at 106–07; *Ballard*, 419 S.W.3d at 123–24; *Edwards*, 426 S.W.3d at 665–68, 2013 WL 5913628, at *18–*20. Conversely, our colleagues in the Western District found the plaintiffs' claims for unjust enrichment survived un-

der the duress exception to the voluntary payment doctrine. *Damon,* 419 S.W.3d at 192–94. Of the five preceding cases, *Unverferth* and *Damon* are the most analogous regarding the facts relating to claims of unjust enrichment, yet the cases yield conflicting results.

In *Unverferth,* the plaintiff received a notice of violation with a threat of arrest or imprisonment if she did not pay her fine or appear in municipal court. *Unverferth,* 419 S.W.3d at 107. This Court, however, found that "Missouri courts do not recognize the threat of legitimate legal process as duress because the party threatened is entitled to plead and prove that he is not liable." *Id.* Accordingly, this Court affirmed the trial court's dismissal of the plaintiff's claims for unjust enrichment because the city "was entitled to pursue legal action" if the plaintiff did not pay the fine or appear in municipal court. *Id.*

In *Damon,* the plaintiff also received a notice of violation with a threat of arrest or imprisonment if he did not pay his fine or appear in municipal court. *Damon,* 419 S.W.3d at 192–93. The Western District held, while distinguishing *Unverferth,* that "taking the allegations in this action and all reasonable inferences as true, which our standard of review commands, here we know of no authority indicating that City was entitled to pursue legal action[.]" *Id.* at 193. Furthermore, that court referenced an opinion by Missouri legal counsel provided to ATS indicating that the enactment of the ordinance was invalid and the possibility that the city and ATS engaged in an unscrupulous business venture. *Id.*

We agree with *Unverferth,* and hold that the trial court appropriately dismissed Appellants' claim for unjust enrichment as against Arnold. Nevertheless, we agree with *Damon,* in that we hold that the trial court erred in dismissing Appellants' claim for unjust enrichment as against ATS.

■■■ There is little dispute as to the first two elements of unjust enrichment regarding ATS's collection—and profit—of the fines/penalties. However, the third element of unjust enrichment—the injustice of retaining the benefit—"is the most significant and, indeed, is the most difficult of all the elements to apply." *Assoc. Eng'g Co. v. Webbe,* 795 S.W.2d 606, 608 (Mo. App. E.D.1990). As previously stated, *supra,* we believe a plethora of questions remain regarding whether City contracted or surrendered its governmental functions (i.e., prosecuting violations of municipal ordinances). *Joseph v. Marriott Intern., Inc.,* 967 S.W.2d 624, 627 (Mo.App. W.D. 1998) ("A city cannot surrender or contract away its governmental functions."). If City did surrender its governmental functions, then it is possible it would be unjust to permit ATS to retain the fines/penalties so collected.[20] However, these issues are not appropriate on appeal from a motion to dismiss. As such, we remand to the trial court for discovery and determination as to whether City surrendered its governmental functions to a non-governmental, for-profit company and whether such arrangement, thereby, unjustly enriched ATS.

As to Appellants' Point V, the trial court's judgment is affirmed in part (Count

---

20. Respondents attempt to claim that ATS was under contract to collect the fine, and, therefore, benefits conferred by a contract cannot constitute a "benefit" in a claim for unjust enrichment. *Hunt v. Estate of Hunt,* 348 S.W.3d 103, 111 (Mo.App. W.D.2011). This argument is unpersuasive because payees never entered into a contract with ATS. ATS may have been "innocent" by adhering to their duties under its contract with Arnold, but "[e]ven an innocent party who has been unjustly enriched may be compelled to surrender the fruits[.]" *Smith v. Whitener,* 42 Ark.App. 225, 856 S.W.2d 328, 330 (Ark.App. 1993).

II of the Petition), and reversed and remanded in part with instructions to permit discovery, *inter alia*, on the issue as to whether City contracted or surrendered its governmental powers to ATS (Count VI of the Petition).

### III. CONCLUSION

We hold the trial court erred in dismissing the claims of both Appellants, and the respective subclasses they purport to represent, based upon standing, waiver and estoppel, and the argument that Moore had an adequate remedy at law. As to Count I of the Petition, we hold that the Ordinance is invalid on the ground that it conflicts with state law and is therefore void and unenforceable.

With regard to Appellants' claims that the Ordinance is invalid and/or unconstitutional because City exceeded its police power in enacting the Ordinance and enacted the Ordinance solely for revenue generation, we reverse the trial court's judgment dismissing Count I of the Petition. We remand these issues for further proceedings consistent with this opinion, including, *inter alia*, discovery related to these issues, as well as for determining whether ATS has been unjustly enriched.

In regards to Appellants' due process claims, we reverse the trial court's judgment dismissing Counts I, III and IV of the Petition and hold that the Ordinance is unconstitutional, insomuch as it is criminal in nature and creates a rebuttable presumption.

Finally, as to Appellants' claims for unjust enrichment, we affirm in part and reverse and remand in part with instructions. We affirm the trial court's judgment dismissing Appellants' claims for unjust enrichment as against City under Count II of the Petition. We reverse and remand the dismissal of Appellants' claims for unjust enrichment as against ATS un-

der Count VI of the Petition, and instruct the trial court to permit discovery, *inter alia*, on the issue as to whether City contracted or surrendered its governmental powers to ATS.

CLIFFORD H. AHRENS, J., concurs.

KURT S. ODENWALD, J., concurs.